**E. I. duPONT de NEMOURS & COMPANY, Petitioner,**

v.

**DEERING MILLIKEN RESEARCH CORPORATION, Respondent.**

**IN RE DEERING MILLIKEN RESEARCH CORPORATION**

v.

**DAN RIVER, INC. (Civil Action No. 70–C–13–D W.D.Va.)**

**Civ. A. No. 76–296.**

United States District Court, D. Delaware.

Sept. 28, 1976.

Walter L. Pepperman, 2nd of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and W. Philip Churchill of Fish & Neave, New York City, for petitioner.

John G. Mulford of Theisen, Lank & Mulford, Wilmington, Del., and Roger W. Parkhurst of Stevens, Davis, Miller & Mosher, Arlington, Va., for respondent.

## MEMORANDUM

LATCHUM, Chief Judge.

Petitioner E. I. duPont de Nemours & Company (duPont) has moved under Rule 45(b), F.R.Civ.P., to quash or modify four subpoenas issued out of this court on August 23, 1976 in aid of trial proceedings in Civil Action No. 70–C–13–D, pending in the United States District Court for the Western District of Virginia.

The factual history relevant to disposition of duPont's motion is as follows: Civil Action No. 70–C–13–D involves a patent infringement action by Deering Milliken Research Corporation (DMRC) against Dan River, Inc. in the District Court of Virginia (hereinafter the Virginia litigation). The patents [1] in dispute relate to a process of knitting fabrics and fabric construction which use an elastic yarn (lycra) produced and sold by duPont. Although duPont is not a party to the Virginia infringement action, its connection with that suit dates back to at least March 1972 when counsel for defendant Dan River requested evidence bearing on the validity of DMRC's patents.[2] duPont produced two technical witnesses, Cooper and Moore, for depositions, and later to testify at trial, on related aspects of the DMRC patents. Dan River apparently believed that work by Cooper and Moore in the field related to fabric knitting or construction would aid in proving invalidity of the patents in suit.

---

1. U.S. Patents 3,254,510; 3,277,673.

2. Docket Item 3, Exhibits A and B. The exhibits also indicate duPont's position of "strict neutrality" with respect to the Virginia patent infringement suit. *Id.*

On November 26, 1975 the Special Master who tried the infringement action found DMRC's patents valid and infringed. Notwithstanding its policy of strict neutrality toward the Virginia litigation,[3] duPont, after reviewing the Special Master's Report, sent a copy of a published article written in 1958 by Reisfeld (not connected with duPont) to DMRC, Dan River, and other companies,[4] which in the view of duPont and some of the litigants tends to show that DMRC's patents were anticipated by the earlier publication by Reisfeld.

As a result of this "new evidence" called to the parties' attention by duPont, the district court reopened the infringement litigation by directing the Special Master, in an order[5] dated April 16, 1976, to receive and consider the "Reisfeld Article" and other testimony or evidence relating to the said article for the purpose of modifying or confirming its earlier report. DMRC then sought, by way of subpoenas issued from the Delaware District Court, to discover documents and depose witnesses in an effort to determine what prompted duPont to depart from its position of neutrality and to disclose the "Reisfeld Article" and, further, how long duPont had known about the article. duPont fully complied with this first set of subpoenas. One of the discovered documents, however, apparently revealed that it was duPont's "basic objective" to "upset the . . . [DMRC] patents."[6] Consequently, DMRC served a second set of subpoenas, also issued out of this court, commanding the production of certain witnesses and documents, pursuant to Rule 30, F.R.Civ.P., in an effort to determine: (1) the date duPont first thought the "Reisfeld Article" might be relevant to the question of validity of DMRC's patents, (2) how duPont gained access to the Report of the Special Master, and (3) duPont's true attitude toward the Virginia litigation and DMRC's patents.

The present motion to quash or limit the second set of subpoenas was then filed on September 8, 1976.[7] It sought an order directing that the subpoenas be either quashed as to their document demands or limited to require production of duPont documents subsequent to the date of the Report of the Special Master on November 26, 1975.[8] DMRC has since offered to limit its demand to include:

"(a) All documents in any way referring to either of the two DMRC patents from the time duPont was first contacted by Dan River for the purpose of furnishing evidence or other involvement in this case, that is from at least the date of Mr. Rabin's phone call to Mr. McGrath on March 15, 1972; and

"(b) Any other documents dated earlier which are indicative of duPont's attitude (1) toward either of the two DMRC patents, or (2) toward either DMRC or Dan River with respect to this Civil Action 70–C–13–D, W.D.Va."[9]

duPont objects to the second set of subpoenas on the ground that they call "for a mass of wholly irrelevant documents, the searching for and collection of which would be unreasonable and oppressive."[10] Without the benefit of the foreign pleadings, however, and in the face of undisputed representations that the documents sought may bear directly on the weight of certain evidence to be reconsidered by the Special Master, the Court is mindful of the caution

---

3. Note 2, *supra*.

4. Other law suits pertaining to DMRC's patents and involving other companies have been stayed, pending the outcome of the action against Dan River.

5. The Virginia District Court's Order was entered upon Dan River's motion under Rule 53(e)(2), F.R.Civ.P., to recommit the Special Master's Report of November 1975 to the Special Master for reconsideration of the finding of patent validity in light of newly presented evidence, *viz.*, the "Reisfeld Article."

6. Docket Item 3, Exhibit C.

7. Oral argument on the motion was heard September 23, 1976.

8. Docket Item 1.

9. Docket Item 3 at 4 and Exhibit E.

10. Docket Item 1 at 1.

that "local courts whose only connection with a case is the supervision of the taking of depositions ancillary to an action elsewhere should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Horizons Titanium Corp. v. Norton Co.,* 290 F.2d 421, 425 (C.A.1, 1961); *Celanese Corp. v. E. I. duPont de Nemours & Co.,* 58 F.R.D. 606 (D.Del.1973). Furthermore, the offer by DMRC to limit its request presents a less burdensome alternative which is acceptable to the Court and should be acceptable to duPont. Although not a party to the Virginia infringement suit, duPont has, nevertheless, actively injected itself into that controversy in such a manner that the Court is unwilling to deny DMRC's request for documents which may affect the ultimate outcome of the infringement action. "Unless it is palpable that the evidence sought [to be made subject to discovery] can have no possible bearing upon the issues, the spirit of the new [federal] rules calls for every relevant fact . . . to be brought out for the inspection not only of the opposing party but for the benefit of the court . . . ." *Hercules Powder Co. v. Rohm & Haas Co.,* 3 F.R.D. 302, 304 (D.Del.1943).

■ Therefore, the Court will enter an order modifying DMRC's subpoenas so as (1) to grant DMRC's request to depose certain of duPont's officers, directors, agents or other persons on matters set forth in DMRC's notice of deposition[11] and (2) to require the deponents to produce all documents in any way referring to either of the two DMRC patents from the time duPont was first contacted by Dan River for the purpose of furnishing evidence or other involvement in the Virginia litigation, that is from March 15, 1972.[12] The order will not require deponents to produce documents earlier than March 15, 1972 indicating duPont's attitude toward DMRC's two patents or the parties involved in the Virginia liti-

gation since duPont has admitted that its objective since at least 1972 was to upset DMRC's patents.[13]

An order will be entered in accordance with this opinion.

---

11. duPont has no objection to this. Docket Item 1, p. 2.

12. Part (a) of DMRC's limited request, in text accompanying note 9, *supra.*

