**CONCORD BOAT CORPORATION,**
**et al., Plaintiffs,**

v.

**BRUNSWICK CORPORATION,**
**Defendant.**

No. M–8–85.

United States District Court,
S.D. New York.

Oct. 21, 1996.

Skadden, Arps, Slate, Meagher & Flom, New York City (Douglas M. Kraus and Michael K. Lowman, of counsel), for nonparty movant Merrill Lynch.

Lovell & Skirnick, New York City (Gary Jacobson, of counsel), for plaintiffs.

## OPINION & ORDER

EDELSTEIN, District Judge:

Currently pending before this Court is a motion by non-party witness Merrill Lynch ("Merrill Lynch," "Merrill," or "movant"), pursuant to Rules 45(C)(3)(A) and 26(c) of the Federal Rules of Civil Procedure ("Rules"), for an order quashing a subpoena *duces tecum* served on Merrill Lynch by plaintiffs. For the following reasons, Merrill Lynch's motion is granted.

## BACKGROUND

This motion arises from a civil antitrust action filed by plaintiffs in Federal District Court in the Eastern District of Arkansas. Plaintiffs, a group of twenty-four corporations engaged in various aspects of the recreational marine industry, charge that defendant Brunswick Corporation ("Brunswick") engaged in anticompetitive practices in viola-

tion of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. (Plaintiffs' Memorandum of Law in Opposition to Motion to Quash Brought by Third Party Subpoena Recipient Merrill Lynch, *Concord Boat Corp. v. Brunswick Corp.*, No. M–8–85 ("Plaintiff's Memo"), at 2–3 (Oct. 10, 1996)); (Consolidated Amended Complaint, *Concord Boat Corp. v. Brunswick Corp.*, File No. LR–C–95–781 (E.D.Arkansas) ("Amended Complaint"), at 1–6 (Feb. 29, 1996).) Non-party witness Merrill Lynch "has acted as investment banker for Brunswick in connection with specific acquisitions and divestitures of business assets, and other business transactions" since the late 1970s. (Memorandum of Law in Support of Motion of Nonparty Witness Merrill Lynch to Quash Subpoena, *Concord Boat Corp. v. Brunswick Corp.*, No. M–8–85 ("Merrill's Memo"), at 2 (Oct. 2, 1996).) Plaintiffs believe that documents maintained by Merrill Lynch as investment banker and financial advisor to Brunswick contain evidence necessary to support plaintiffs' various antitrust claims. (Plaintiffs' Memo at 2, 5.)

On July 31, 1996, plaintiffs caused a subpoena *duces tecum* to be served on Merrill Lynch at its headquarters in New York City. *Id.* at 5; (Subpoena in a Civil Case, *Concord Boat Corp. v. Brunswick Corp.*, File No. LR–C–95–781 ("Brunswick Subpoena") (July 23, 1996 S.D.N.Y.).) The Brunswick Subpoena required Merrill to produce and permit inspection and copying of documents described in an attached schedule on August 23, 1996, at 9:00 a.m. (Brunswick Subpoena.) The schedule of requested documents spans four pages, and lists twenty-two separate "Requests for Production of Documents." *Id.* These requests include documents covering an assortment of topics, including:

*Request No. 1:* All documents relating to Brunswick's market share in any market relating to the marine industry.

*Request No. 2:* All documents relating to Brunswick's monopoly, dominance, power, or strength in any market relating to the marine industry.

*Request No. 4:* All documents relating to any meeting(s) in which you and Brunswick were present, including all agendas, correspondence, memoranda, and notes relating to such meeting.

*Request No. 5:* All documents relating to Brunswick's financial condition, including all of Brunswick's balance sheets, income statements, statements of cash flow, and related workpapers, compilations, reviews or opinions with respect thereto.

*Request No. 6:* All documents relating to any communication(s) you have made relating to Brunswick's financial condition.

*Request No. 10:* All documents relating to any actual, potential, and/or hypothetical merger(s), acquisition(s), consolidation(s), spin-off(s), or business unit sale(s) involving Brunswick.

*Request No. 18:* All documents you have submitted or given to Brunswick.

*Request No. 19:* All documents submitted or given to you by Brunswick.

*Request No. 20:* All documents submitted or given to you by Faegre & Benson.

*Request No. 21:* All documents submitted or given to you by Friday Eldredge.

*Request No. 22:* All documents submitted or given to you by Mayer Brown.

*Id.* at 9–12.

Following receipt of the Brunswick Subpoena, Merrill Lynch's in-house Litigation Department communicated with plaintiffs' counsel regarding Merrill's ability to comply with both the substantive terms and the time limit of the Brunswick Subpoena. (Merrill's Memo at 5–7); (Plaintiffs' Memo at 6–9.) On August 13, 1996, Merrill requested an extension of time of one month in order to give Merrill time to search for the responsive documents. (Plaintiffs' Memo at 6.) Plaintiffs' counsel agreed to extend Merrill's time to respond until August 30, 1996, "and stated that plaintiffs would provide Merrill Lynch with further extensions should circumstances so warrant." *Id.*

On August 19, 1996, Merrill Lynch requested a second extension of time from plaintiffs' counsel in order to ascertain the documents responsive to the Brunswick Subpoena and to attempt to narrow the range of the responsive documents with plaintiffs' counsel. *Id.* at 7. Plaintiffs' counsel once again agreed to Merrill Lynch's request, and

extended Merrill's time to respond until September 16, 1996. *Id.* Subsequent to this second extension of time, plaintiffs' counsel received a phone call from Kenneth J. Nixon ("Nixon"), a lawyer in the Office of the General Counsel of Merrill Lynch. *Id.* Nixon asked plaintiffs' counsel if Merrill could generally limit the scope of its response to the Brunswick Subpoena to Brunswick's marine business. *Id.* at 8. Plaintiff's counsel "agreed to this limitation of the Subpoena's scope to Brunswick's marine business provided that the limitation was without prejudice to Plaintiff's right to claim an entitlement to other documents in the future." *Id.* Plaintiffs' counsel further "told Nixon that if he had any further questions, or if he desired to further limit the subpoena's scope, [Nixon] should feel free to contact Plaintiffs' counsel." *Id.* Nixon agreed with plaintiffs' counsel's proposals. *Id.*

On September 13, 1996, Merrill Lynch asked plaintiffs' counsel to extend Merrill Lynch's time to respond a third time, and plaintiffs' counsel set a new due date of September 26, 1996. *Id.* at 8–9. On September 25, 1996, Merrill again contacted plaintiffs' counsel, and informed counsel that Merrill could not respond to the Brunswick Subpoena because it was overbroad, *id.* at 9; (Merrill's Memo at 5), and that it was considering referring the matter to outside counsel. (Merrill's Memo at 6.) On September 26, 1996, Merrill Lynch retained the law firm of Skadden, Arps, Slate, Meagher & Flom ("Skadden") to represent Merrill Lynch in this matter. *Id.;* (Affirmation of Susan Getzendanner, *Concord Boat Corp. v. Brunswick Corp.,* No. M–8–85 ("Getzendanner Aff."), ¶ 2 (Oct. 2, 1996).)

On September 26, 1996, Susan Getzendanner ("Getzendanner"), a partner at Skadden, spoke with plaintiffs' counsel regarding the Brunswick Subpoena. (Getzendanner Aff., ¶ 2.); (Plaintiffs' Memo at 10.) Getzendanner stated to plaintiffs' counsel that she "had been informed prior to placing this call that Merrill Lynch had been granted an extension until September 26, 1996, to respond to or object to the subpoena," (Getzendanner Aff., ¶ 2), and asked plaintiffs' counsel "for clarification of the breadth of the subpoena and for

additional time within which to respond to or object to the subpoena." *Id.,* ¶ 3; *see* (Plaintiffs' Memo at 10.) Plaintiffs' counsel refused Getzendanner's requests. (Getzendanner Aff., ¶ 3; *see* (Plaintiffs' Memo at 11.)

According to Getzendanner, because plaintiff's counsel refused to grant Merrill another extension of time, "Merrill Lynch is forced to quash the subpoena." (Getzendanner Aff., ¶ 5.) On October 2, 1996, Skadden, on behalf of Merrill Lynch, filed with the Clerk of the Court of the Southern District of New York on Order to Show Cause "why the subpoena dated July 31, 1996 and served on Merrill Lynch on behalf of plaintiffs should not be quashed pursuant to Fed.R.Civ.P. 45 and 26." (Order, *Concord Boat Corp. v. Brunswick Corp.,* No. M. 8–85 ("October Order") (S.D.N.Y. Oct. 2, 1996).) Judge Kaplan, sitting in Part I, found that Merrill Lynch's "application fails to demonstrate any urgency or to comply with S.D.N.Y. Rule 3(c)(4)," and "declin[ed] to bring on the motion earlier than could be accomplished by notice of motion." *Id.* at 2. Judge Kaplan signed the order, however, "simply to avoid unnecessary paperwork," and ordered the parties to file papers and to appear for argument before the subsequent Part I Judge. *Id.* Counsel for both Merrill Lynch and plaintiffs appeared before this Court, sitting in Part I, on October 15, 1996. After submitting their respective papers to this Court, both counsel waived oral argument and consented to this Court deciding the instant matter on submission.

## DISCUSSION

Merrill Lynch moves this Court to quash the Brunswick Subpoena pursuant to Federal Rules of Civil Procedure 45(c)(3)(A) and 26(c). (Merrill's Memo at 1.) It asserts that "the subpoena is manifestly overbroad, and compliance with it would place an undue burden on Merrill Lynch." *Id.* at 2. Plaintiffs' reject this characterization, claim that Merrill waived its right to object to the Brunswick Subpoena because Merrill failed to timely respond to the Brunswick Subpoena, and that Merrill has failed to satisfy its burden in moving to quash the subpoena. (Plaintiff's Memo at 13–15.) Merrill Lynch

disputes each of plaintiffs' three assertions. (Memorandum of Law in Further Support of Motion of Nonparty Witness Merrill Lynch to Quash Subpoena, *Concord Boat Corp. v. Brunswick Corp.,* No. M. 8–85 ("Merrill's Memo in Support"), at 2–7 (Oct. 14, 1996).) This Court briefly will review the legal principles underlying the parties' dispute before moving on to the three specific issues raised in the parties' respective papers.

### I. Rule 26 and Rule 45

Rule 26 of the Federal Rules of Civil Procedure sets forth the "General Provisions Governing Discovery" for civil suits in the federal courts. It authorizes parties to obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and all information "reasonably calculated to lead to discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). Rule 26(c), however, curtails this power by providing that

> [u]pon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>> (1) that the disclosure or discovery not be had;
>> (2) that the disclosure or discovery maybe had only on specified terms and conditions.

Fed.R.Civ.P. 26(c).

Rule 45 provides a corresponding level of protection for persons subject to subpoena. 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2449, at p. 75 (1995). Rule 45(c), entitled "Protection for Persons Subject to Subpoenas," in relevant part states:

> (c)(2)(B) ... a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection and copying of any or all of the designated materials or the premises.
> (c)(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
>> (iv) subjects a person to undue burden.

Fed.R.Civ.P. 45(c)(2)(B), (c)(3)(A)(iv).

The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections. *United States v. International Bus. Mach. Corp.,* 70 F.R.D. 700, 701–02 (S.D.N.Y.1976); *see Krewson v. City of Quincy,* 120 F.R.D. 6, 7 (D.Mass. 1988) (citing cases from various district courts). "In unusual circumstances and for good cause, however, the failure to act timely will not bar consideration of objections." *Semtek Int'l, Inc. v. Merkuriy Ltd.,* No. 3607 DRH, 1996 WL 238538, at *2 (N.D.N.Y. May 1, 1996); *see IBM,* 70 F.R.D. at 702 & n. 9; *Angell v. Shawmut Bank Conn. Nat'l Assoc.,* 153 F.R.D. 585, 590 (M.D.N.C.1994); *In re Goodyear Tire & Rubber Co. Sec. Litig.,* 1991 WL 172930, at *1, 1991 U.S.Dist. LEXIS 14486, at *2 (N.D.Ohio June 21, 1991); *Krewson,* 120 F.R.D. at 7; *Celanese Corp. v. E.I. duPont de Nemours & Co.,* 58 F.R.D. 606, 609–10 (D.Del.1973). Courts find such unusual circumstances where: (1) "the subpoena is overbroad on its face and 'exceeds the bounds of fair discovery,' " *Semtek,* 1996 WL 238538, at *2; *Krewson,* 120 F.R.D. at 7; (2) the subpoenaed witness is a non-party acting in good faith, *Semtek,* 1996 WL 238538, at *2; and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena. *Id.; Goodyear,* 1991 WL 172930, at *2, 1991 U.S.Dist. LEXIS 14486, at *2–3; *Celanese Corp.,* 58 F.R.D. at 610.

As this Court frequently has noted, "the burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *United States v. International Bus. Mach Corp.,* 83

F.R.D. 97, 104 (S.D.N.Y.1979); *IBM,* 70 F.R.D. at 702; *see* 9A Wright & Miller, § 2449, at p. 46. Whether a subpoena imposes upon a witness an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *IBM,* 83 F.R.D. at 104. In addition, the status of a witness as a non-party to the underlying litigation "entitles [the witness] to consideration regarding expense and inconvenience." Fed.R.Civ.P. 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party from significant expense. . . ."); *Semtek,* 1996 WL 238538, at *2. The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court. *Id.* at *3; 9A Wright & Miller, Federal Practice and Procedure, § 2463.

Of the three issues raised in the parties' submissions to this Court, the timeliness of Merrill Lynch's motion to quash is a threshold issue that this Court must resolve before considering movant's substantive objections to the Brunswick Subpoena. In order for this Court to determine whether the instant case presents the "unusual circumstances" that would excuse Merrill's alleged failure to timely file their objections, however, this Court must first evaluate the reasonableness of the Brunswick Subpoena. *See Semtek,* 1996 WL 238538, at *2; *Krewson,* 120 F.R.D. at 7. Accordingly, this Court will determine the reasonableness of the subpoena before considering the other issues raised by the instant motion.

## II. Reasonableness of the Brunswick Subpoena

 Merrill Lynch claims that the Brunswick Subpoena is unreasonable and should be quashed pursuant to Rule 45(c)(3)(A)(iv). (Merrill's Memo at 9.) Merrill maintains that the Brunswick Subpoena "is clearly overbroad on its face." *Id.* It asserts that "[m]any of the requests bear no relation to the antitrust litigation, because they call for production of documents with no direct relationship to the marine aspect of Brunswick's business." *Id.* In support of this assertion, Merrill explains the nature of both Brunswick's business and its relationship with Merrill.

Brunswick is a multinational corporation with offices and facilities on four continents. (Affirmation of Thomas R. Williams, Jr., *Concord Boat Corp. v. Brunswick Corp.,* No. M–8–85 ("Williams Aff."), ¶ 4 (Oct. 1, 1996).) It is organized into two segments encompassing six divisions, several of which are wholly unrelated to the recreational watercraft industry. *Id.* For example, two divisions manufacture and sell fishing reels and tackle, water skiing equipment, and camping gear. *Id.* Another division manufactures and sells products for the bowling industry and operates bowling and entertainment centers in the United States, Canada, Latin America, Asia, and Europe. *Id.*

Merrill's business relationship with Brunswick began in the late 1970s, and since 1987, Merrill has been the "principal banker and financial advisor to Brunswick." (Merrill's Memo at 9–10); (Williams Aff., ¶¶ 1, 5.) Throughout this relationship, Merrill "has focused on the corporation *as a whole,* rather than any particular division or segment of Brunswick." (Merrill's Memo at 9–10 (emphasis in original)); *see* (Williams Aff., ¶ 5.) According to Merrill, it has advised Brunswick "on numerous projects that had no direct connection to the marine aspect of Brunswick's business," and that "involved many different Merrill Lynch employees in numerous Merrill Lynch offices, including offices in the United States, Europe, and Asia." (Merrill's Memo at 10); (Williams Aff., ¶¶ 6–7.) For example, Merrill advised Brunswick on the creation of its "company-wide employee stock ownership plan," the divestiture of Brunswick's Industrial Products Division, the sale of Brunswick's stake in a Japanese affiliate, the public offering of six million shares of Brunswick common stock, and "a $125 million debenture offering and retirement of debt." (Williams Aff., ¶ 6.)

Merrill Lynch asserts that "compliance with [the subpoena] requests would be unduly burdensome . . . because of the breadth of the relationship between Brunswick and Merrill Lynch, and the number of offices and

personnel involved over the years." *Id.* Merrill explains that the requests contained in the Brunswick Subpoena "call for virtually every document in Merrill Lynch's files nationwide for the past ten years relating to *any* aspect of Brunswick's business." *Id.* (emphasis in original). Based on the "volume of potentially responsive documents and the high-ranking status of the managers and employees who will be required to spend substantial time in helping to collect these documents," Merrill contends that "completing this task will result in a substantial diversion of resources." (Williams Aff., ¶ 7.)

In support of these arguments, Merrill Lynch submitted the sworn affirmation of Thomas R. Williams, Jr. ("Williams"). (Affirmation of Thomas R. Williams, Jr., *Concord Boat Corp. v. Brunswick Corp.*, No. M–8–85 ("Williams Aff.") (Oct. 1, 1996).) Williams is Managing Director in the Chicago office Merrill Lynch, and until last year, was the "Merrill Lynch Relationship Manager for Brunswick." *Id.* at ¶ 1. In this capacity, he had been "actively involved in Merrill Lynch's relationship with Brunswick, which began in the late 1970s, since 1986." *Id.* In his affirmation, Williams avers that he is familiar with the contents of the Brunswick Subpoena, and states that "[i]n [his] view, compliance with the subpoena would impose an undue burden on Merrill Lynch." *Id.*, ¶ 2.

Plaintiffs dispute Merrill Lynch's categorization of the Brunswick Subpoena as unreasonable. (Plaintiffs' Memo at 13, 16–17.) They claim that "[g]iven the fact that plaintiffs knew very little about the exact nature of the documents relating to Brunswick which Merrill Lynch might have, and given the breadth of market-related information needed in complex antitrust litigation, the categories of documents enumerated in the subpoena are really quite specific." *Id.* at 13. Plaintiffs assert that request numbers one through four are "specific" because they seek documents relating to Brunswick's market share in the marine industry, its acquisition of certain boat companies, and any meeting between Merrill Lynch and Brunswick representatives. *Id.* Plaintiffs continue that "[m]ost of the other requests are similarly specific." *Id.* Plaintiffs state, however, that

"[t]he only requests that are not highly specific on their face are Request Nos. 5 ... and 6 ... and Requests Nos. 18 and 19," but defend these four concededly broad requests on the grounds that they "were effectively and significantly narrowed by plaintiffs' counsel's agreement on August 20 with Merrill Lynch attorney Nixon.... " *Id.*

This Court's examination of the Brunswick Subpoena and review of relevant case law convince this Court that Merrill Lynch has correctly characterized the Brunswick Subpoena as "overbroad on its face." As this Court previously has noted, "[t]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *IBM,* 83 F.R.D. at 106–07. By their drafting of the Brunswick Subpoena, plaintiffs' counsel have run this risk and lost.

As excerpted above, plaintiffs' requests for documents effectively encompass documents relating to every transaction undertaken by Merrill for Brunswick during the last ten years that Merrill has served as Brunswick's principal investment banker and financial advisor. For example, Request No. 4 seeks "[a]ll documents relating to any meeting(s) in which you and Brunswick were present.... " (Brunswick Subpoena at 9.) By its plain terms, this request does not distinguish between documents from meetings regarding Brunswick's recreational watercraft business and those that concern Brunswick's retirement plans, its camping business, or its bowling and entertainment centers abroad. Request No. 10's demand for "[a]ll documents relating to any actual, potential, and/or hypothetical merger(s), acquisition(s), consolidation(s), spin-off(s), or business unit sale(s) involving Brunswick," *id.* at 11, similarly lacks specificity or focus. Because these requests "pursue[ ] material with little apparent or likely relevance to the subject matter," *IBM,* 83 F.R.D. at 106–07, of plaintiffs' underlying antitrust claims, this Court finds that they are overbroad and unreasonable.

Moreover, Requests No. 5 and 6, demand all documents relating to Brunswick's financial condition, and "to any communication(s)" Merrill Lynch has made regarding Bruns-

wick's financial condition. (Brunswick Subpoena at 10.) As Merrill Lynch points out, "Merrill Lynch is a financial services company, and almost all communications with a client in some way could potentially 'relate to' the client's 'financial condition.'" (Merrill's Memo at 11.) This Court previously has rejected such vague requests for documents because they are "guaranteed to produce information which would not even meet the broad standard of relevancy [underlying the discovery rules]." *United States v. International Bus. Mach. Corp.,* 72 F.R.D. 78, 83 (S.D.N.Y.1976) (denying request for documents relating to "employment" of witnesses as not sufficiently particular because "all documents relating to an employee are theoretically concerned with his employment....").

Requests Nos. 20, 21, and 22 similarly fail to state the nature of the documents plaintiffs seek with reasonable particularity. Each request seeks "[a]ll documents submitted or given by you to by" one of three different law firms. (Brunswick Subpoena at 12.) These requests do not limit their scope to documents relating to either Brunswick in general, or to specific Brunswick recreational marine businesses or transactions. Such a fishing expedition will reel in "material with little apparent or likely relevance to the subject matter" at hand, *IBM,* 83 F.R.D. at 106–07, and this Court thus finds that it comports with neither the letter nor the spirit of the federal civil discovery rules.

To reiterate, this Court finds that almost half of the twenty-two requests listed in the Brunswick Subpoena fail to limit their scope of inquiry to Merrill's dealings with a particular division, segment, or location of Brunswick's operation. These requests go beyond any reasonable attempt to identify documents pertinent to Brunswick's recreational watercraft business, and include within their scope documents that are irrelevant not only to plaintiffs' underlying antitrust claims, but also to Merrill's relationship with Brunswick. Accordingly, this Court finds that the Brunswick Subpoena is overbroad on its face, and as such, falls within Rule 45(c)(3)(A)'s prohibition on subpoenas that subject a witness to "undue burden."

### III. Timeliness of Merrill Lynch's Motion

■ As previously discussed, Rule 45 permits a person or party served with a subpoena for the production of documents to serve written objections to the subpoena "within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service...." Fed. R.Civ.P. 45(c)(2)(B). Both plaintiffs and Merrill Lynch concur that the instant motion was filed beyond the time limits set forth in Rule 45(c)(2)(B). (Plaintiffs' Memo at 14); (Merrill's Memo at 8 n. 2); (Merrill's Memo in Further Support at 3.) Plaintiffs vigorously argue that because Merrill failed to timely serve written objections to the Brunswick Subpoena, Merrill has waived any objections to the subpoena. (Plaintiffs' Memo at 14–15.)

Merrill counters that the circumstances of the instant case militate in favor of excusing Merrill's failure to strictly comply with Rule 45's time limits. Merrill states that, as

a non-party to the antitrust litigation, [it] did not simply ignore the subpoena, but instead actively communicated with plaintiffs' counsel in procuring an extension for the purpose of assessing whether, given the vast scope of the subpoena, compliance would subject [M]errill Lynch to an undue burden. When, Merrill Lynch concluded that compliance would be unduly burdensome, it decided to retain outside counsel and so informed plaintiff's counsel on September 25, 1996. Within the period for response, Merrill Lynch's outside counsel asked for a further extension, but this request was refused. Following this refusal, Merrill Lynch's outside counsel diligently prepared this motion and filed it as soon thereafter as possible.

(Merrill's Memo at 8 n. 2); *see* (Merrill's Memo in Support at 5.) Under these circumstances, Merrill asserts that it should not be deemed to have waived its right to object to the scope of the subpoena. (Merrill's Memo at 8 n. 2); *see* (Merrill's Memo in Support at 5.)

Although failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections, *IBM,* 70 F.R.D. at

701–02, courts have held that "[i]n unusual circumstances and for good cause, ... the failure to act timely will not bar consideration of objections." *Semtek*, 1996 WL 238538, at *2; *IBM*, 70 F.R.D. at 702 & n. 9; *see e.g., Goodyear*, 1991 WL 172930, at *1, 1991 U.S.Dist. LEXIS 14486, at *2; *Krewson*, 120 F.R.D. at 7; *Celanese*, 58 F.R.D. at 609–10. This Court finds such unusual circumstance and good cause in the instant case. First, as discussed immediately above, the Brunswick Subpoena is overbroad on its face and exceeds the bounds of fair discovery. *See Semtek*, 1996 WL 238538, at *2; *Krewson*, 120 F.R.D. at 7.

Second, Merrill is a non-party to the underlying antitrust litigation. Although "this status does not relieve [Merrill] of its obligations either to respond to proper discovery requests or to comply with applicable rules, it does entitle [Merrill] to consideration regarding expense and inconvenience." *Semtek*, 1996 WL 238538, at *2; *see* Fed.R.Civ.P. 45(c)(2)(B). The Brunswick Subpoena requires Merrill to produce voluminous documents regarding a broad range of transactions that Merrill performed for Brunswick during the ten years that Merrill served as Brunswick's principal investment banker and financial advisor. These documents are located in different Merrill Lynch branches throughout the world. This Court notes that Merrill Lynch is not an unsophisticated litigant, and that it has access to the resources necessary to handle complex litigations. Nevertheless, Merrill is not a party to the complex litigation underlying the instant motion, it has no interest in the outcome of that litigation, and thus, this Court finds that it should not be subject to the same burden of production that a party to the underlying litigation is subject. *Semtek*, 1996 WL 238538, at *2. Accordingly, this Court considers Merrill's status as a non-party relevant to determining whether Merrill's untimely action under Rule 45 bars this Court's consideration of Merrill's objections to the Brunswick Subpoena. *Id.*

Third, Merrill's and plaintiffs' respective counsels were in frequent contact concerning Merrill's compliance with the Brunswick Subpoena prior to the time Merrill filed the instant motion. The facts presented by the parties demonstrate that, until just before Merrill filed the instant motion, the parties course of conduct regarding the Brunswick Subpoena was one of cooperation, not contention. Based on such a course of conduct, Merrill reasonably expected that plaintiffs would continue to afford Merrill an opportunity to informally negotiate the scope of plaintiffs' document request. *See Semtek*, 1996 WL 238538, at *2; *Goodyear*, 1991 WL 172930,.at *2, 1991 U.S. Dist. LEXIS 14486, at *2–3; *Celanese*, 58 F.R.D. at 609–10. Moreover, as soon as Merrill discovered that plaintiffs' counsel foreclosed this opportunity, Merrill promptly filed the instant motion. Under these circumstances, this Court will not refuse to entertain Merrill's motion. As one district court has noted, "[s]uch a strict interpretation of the Rule would discourage informal dispute resolution among parties who cause issuance of subpoenas duces tecum and those to whom the subpoenas are issued," a result that "certainly would work against the efficient administration of justice." *Goodyear*, 1991 WL 172930, at *1, 1991 U.S. Dist. LEXIS 14486, at *3–4.

Accordingly, this Court finds that Merrill Lynch has not waived its objections to the Brunswick Subpoena, and that such objections are properly before this Court.

### IV. Merrill Lynch's Burden under Rule 45

■ The final issue pending before this Court is whether movant Merrill Lynch has met its burden of persuasion regarding its motion to quash the Brunswick Subpoena. Plaintiffs assert that it has not because: (1) the size and resources of Merrill Lynch are such that compliance with the subpoena is not a threat to Merrill's normal operations; (2) the nature and importance of the subject matter of plaintiffs' suit justifies any burden that compliance with the Brunswick Subpoena may impose upon Merrill; and (3) the document request contained in the Brunswick Subpoena will not "denude [Merrill] of files and records essential for its continued operation." (Plaintiffs' Memo at 16.)

Merrill Lynch rejects plaintiffs' assertions, and contends that they are "incorrect both

legally and factually." (Merrill's Memo at in Support 6.) Merrill repeats its claim that its status as "a nonparty with no arguable outcome in the stake [sic] of the litigation ... is a strong factor to be taken into account in assessing the amount of burden to which Merrill Lynch is subjected." *Id.* It also repeats its contention that the nature and number of transactions that it performed for Brunswick over the last ten years have generated a quantity of paperwork throughout its branch offices that renders compliance unduly burdensome. *Id.* at 7. Finally, Merrill denies plaintiffs' assertion that the nature and importance of the subject matter of the underlying lawsuit justify the breadth of plaintiffs' document request because Merrill asserts that the Brunswick Subpoena calls for documents that are irrelevant to this suit. *Id.* at 6.

To reiterate, what constitutes an undue burden in a given instance is a case specific inquiry, 9A Wright & Miller, Civil 2d § 2449, at 48 & nn. 32–33, that turns on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *IBM*, 83 F.R.D. at 104. Applying these factors to the instant case, this Court finds that they militate in favor of a finding that the Brunswick Subpoena imposes an undue burden on Merrill Lynch.

As previously noted, the Brunswick Subpoena is overly broad on its face. Almost half of the requests listed in the Brunswick Subpoena utterly fail to describe the documents sought with *any* particularity. Furthermore, it effectively seeks every document generated, received or maintained by Merrill during a ten-year period of its representation of Brunswick. Consequently, the Brunswick Subpoena calls for documents that are wholly irrelevant to the underlying antitrust litigation. Finally, as Merrill has demonstrated to this Court through its submission of both memoranda and the affidavit of Managing Director Williams, compliance with the terms of the Brunswick Subpoena would subject numerous Merrill Lynch employees and managers in several branch offices to count-

less hours of research, analysis, and compilation.

Plaintiffs' arguments to the contrary do not require a different result. Plaintiffs are correct that courts—including this Court— have held resolution of a motion to quash a subpoena turns on the size and resources of a subpoena recipient, the nature and importance of the subject matter of the underlying litigation, and whether a given the document request will not "denude [Merrill] of files and records essential for its continued operation." *See IBM*, 83 F.R.D. at 108–09. Plaintiffs are incorrect, however, that the cases they cite in support of these holdings control this Court's resolution of the instant case. As this Court noted in *IBM*, the aforementioned factors are relevant to motions to quash made by a subpoena recipient who is a party to, or who will necessarily be affected by the final judgment entered in, the underlying litigation. *Id.* (denying motion to quash brought by defendant's Chairman of the Board); *United States v. International Bus. Mach. Corp.*, 62 F.R.D. 507, 509–10 (S.D.N.Y.1974) (denying motion to quash brought by members of computer industry which would necessarily be affected by final judgment in litigation). In the instant case, movant Merrill Lynch neither is a party to the underlying antitrust litigation, nor will be affected by the final judgment rendered in that litigation. Consequently, this Court rejects plaintiffs' claims regarding this issue.

Accordingly, this Court finds that compliance with the Brunswick Subpoena would subject non-party Merrill Lynch to an undue burden in contravention of the terms of Rule 45(c)(2)(B) and (c)(3)(A)(iv). As a result, this Court finds that the Brunswick Subpoena must be quashed or modified, pursuant to Rule 45(c)(3)(A). 9A Wright & Miller, § 2463, at p. 70. In the instant case, this Court finds that quashing the Brunswick Subpoena is the appropriate relief for Merrill Lynch.

Although Rule 45 empowers a district court to "modify" a subpoena, Fed.R.Civ.P. 45(c)(3)(A); 9A Wright & Miller, § 2459, at p. 52 & § 2463, at p. 74, this Court declines to do so in the instant case. As previously stated, virtually half of the twenty-two re-

quests for documents in the Brunswick Subpoena are vague, inexplicit, and overbroad. It is beyond the capabilities of this Court to divine precisely which of the voluminous documents received, created, or maintained by Merrill in the course of its relationship with Brunswick might assist plaintiffs' preparation of their underlying antitrust suit. Furthermore, even if this Court could forecast a plaintiffs' discovery needs, it would hesitate to do so in the instant case where the underlying litigation is pending in a distant jurisdiction, subject to other discovery orders of which this Court is unaware, and based on facts about which this Court knows little. If plaintiffs wish to obtain information from Merrill Lynch regarding Brunswick's recreational watercraft business, it is for plaintiffs—not this Court—to redraft the subpoena so that *all* of its provisions state precisely and specifically the documents plaintiffs seek.

## CONCLUSION

IT IS HEREBY ORDERED THAT movant Merrill Lynch's motion to quash the subpoena served by plaintiffs is GRANTED.

SO ORDERED.