**In re COUNTY OF ORANGE a political subdivision of the State of California, Debtor.**

**Bankruptcy Nos. SA 94–22272–JR, 97–412(JHG).**

United States Bankruptcy Court, S.D. New York.

May 7, 1997.

---

Weil, Gotshal & Manges L.L.P. by Dennis J. Block and Jonathan M. Hoff, New York City, for Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Eric M. Rosenberg, Dennis J. Block and Jeffrey L. Tanenbaum.

Hennigan, Mercer & Bennett by Bruce Bennett, Anthony Castañares and Mary H. Chu, Los Angeles, CA, for County of Orange.

Wachtell, Lipton, Rosen & Katz by Theodore Gewertz, and David C. Bryan, New York City, for Appaloosa Investment Limited Partnership I and Belmont Capital Partners II, L.P.

## Decision On Motion To Quash Subpoenas

JEFFRY H. GALLET, Bankruptcy Judge.

The County of Orange ("Orange County") subpoenaed two attorneys from Weil, Gotshal & Manges ("Weil Gotshal"), counsel to Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Inc. (collectively "Merrill Lynch"), to appear for depositions concerning its case pending in the Bankruptcy Court for the Central District of California ("California Court"). Merrill Lynch moves to quash the Subpoenas because the depositions will be burdensome and the evidence sought is privileged.

### FACTS

In July 1994, Merrill Lynch underwrote Orange County's $600 million 1994–95 Taxable Notes issue. As the sole underwriter, Merrill Lynch purchased the entire $600 million issue from Orange County, which they resold to investors. Later, Merrill Lynch repurchased $64 million of the notes (the "Notes").

On December 6, 1994, Orange County filed a bankruptcy petition under Chapter 9 of the United States Bankruptcy Code. The California Court set December 1, 1995 as the bar date for claims. On January 25, 1995, Orange County commenced an adversary proceeding against Merrill Lynch seeking $2 billion in damages based on allegations that Merrill Lynch wrongfully induced Orange County to enter into certain securities transactions that were illegal under California law and, therefore, void.

On November 30, 1995, Merrill Lynch assigned the Notes to Appaloosa Limited Partnership I ("Appaloosa"). The assignment provided that (1) Merrill Lynch would transfer "legal and beneficial ownership and legal title [of the Notes] free and clear of all Liens" to Appaloosa; (2) Appaloosa would "[u]nder no circumstances ... be entitled to

rescind [its] purchase of the [Notes] or return such [Notes] to Merrill Lynch"; (3) Merrill Lynch and Appaloosa would "have no liability of any kind whatsoever to each other except as expressly set forth in this agreement"; (4) the "Agreement constitutes the entire agreement between the parties hereto and supersedes all prior and contemporaneous agreements as to the subject matter hereof"; (5) because Appaloosa acquired its Notes from Merrill Lynch, if a court of competent jurisdiction entered a final order that Appaloosa was not entitled to receive the full principal amount of its notes from Orange County, Merrill Lynch would provide certain indemnification to Appaloosa; (6) Appaloosa would cooperate with Merrill Lynch if Orange County contested Appaloosa's right to collect on its Notes and litigation ensued between Appaloosa and the Orange County; (7) Merrill Lynch retained the conditional right to approve any settlement of the "Appaloosa matter"; (8) if holders of notes other than Appaloosa received interest payments or other distributions from Orange County, Merrill Lynch would, under certain circumstances, make certain payments to Appaloosa; (9) Merrill Lynch would reimburse Appaloosa for certain legal fees in connection with its attempt to receive payment on the Notes; (10) Merrill Lynch had the right to approve Appaloosa's legal counsel; and (11) Merrill Lynch retained the option to repurchase Appaloosa's interest in the Notes for a sum certain.

On December 1, 1995, Appaloosa filed a proof of claim seeking redemption of the Notes by Orange County in the amount of $64 million. On December 8, 1995, Appaloosa sold $12 million of the Notes to Belmont Capital Partners II, L.P. ("Belmont").

Orange County's Chapter 9 plan was confirmed and subsequently consummated. Appaloosa and Belmont tendered the Notes for payment. Orange County declined payment and filed an objection to Appaloosa's claim. It is in relation to that objection that this motion is made.

Appaloosa and Belmont moved for summary judgment with respect to their claims. The California Court deferred its decision on the summary judgment motion until the issue of the Merrill Lynch/Appaloosa relationship is resolved. It granted Orange County discovery about whether Merrill Lynch still holds an interest in the Notes. A hearing on the interest issue is scheduled for June 10, 1997.

Orange County subpoenaed Eric Rosenberg, Assistant General Counsel of Merrill Lynch, and Dennis J. Block and Jeffrey L. Tanenbaum, members of Well Gotshal. Orange County asserts that "the limited discovery obtained ... revealed that Merrill Lynch had delegated the responsibility of negotiating the Appaloosa transaction and implementing the agreement ultimately reached between the parties to its counsel."

Orange County seeks to find out what interest, if any, Merrill Lynch has in the Notes. Among its areas of inquiry is whether Merrill Lynch, through Well Gotshal, is controlling Appaloosa and Belmont in this proceeding.

### THE LAW

*Deposition-Discovery*

"Deposition-Discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). *See Redvanly v. NYNEX Corp.,* 152 F.R.D. 460, 464 (S.D.N.Y.1993) (favoring liberal disclosure in our system of justice). Rule 26 of the Federal Rules of Civil Procedure governs discovery for civil suits in federal courts. *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y.1996). "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Fed.R.Civ.P. 26(b)(1). Under this rule, relevance is "defined broadly to include any materials which 'appear reasonably calculated to lead to the discovery of admissible evidence.'" *Bank Brussels Lambert v. Chase Manhattan Bank,* 1995 WL 617362 at *1 (S.D.N.Y. Oct.20, 1995) (*quoting Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991)); *See Troupin v. Metropolitan Life Ins. Co.,* 169 F.R.D. 546, 547 (S.D.N.Y.1996); *Martin v. Valley National Bank of Arizona,* 140 F.R.D. 291, 300

(S.D.N.Y.1991). Rule 26(c) limits discovery by providing that "[u]pon motion by a party or by the person from whom discovery is sought ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c).

■ Rule 45 of the Federal Rules of Civil Procedure specifically protects persons subject to subpoenas. *Concord Boat Corp.*, 169 F.R.D. at 48. A subpoena to appear for oral testimony will be quashed under Fed.R.Civ.P. 45(c)(3) if it subjects a person to an undue burden, requires the disclosure of privileged matter, or fails to allow for a reasonable time to comply.[1] The movant bears the burden of proving that the subpoena imposes an undue burden on a witness. *Concord Boat Corp.*, 169 F.R.D. at 48 (citing *United States v. International Bus. Machs., Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y.1979)). *See Mangla v. University of Rochester*, 168 F.R.D. 137, 140 (W.D.N.Y.1996) (*citing Irons v. Karceski*, 74 F.3d 1262 (D.C.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1677, 134 L.Ed.2d 780 (1996)) (party moving to quash a subpoena bears a heavy burden of proof).

■ The determination of whether a subpoena is overly burdensome or unreasonable is in the discretion of the trial court. *See Concord Boat Corp.* 169 F.R.D. at 48 (S.D.N.Y.1996) (*citing United States v. International Bus. Machs. Corp.*, 70 F.R.D. 700 (S.D.N.Y.1976)). The Advisory Committee described an "undue burden" under Fed.R.Civ.P. 45(c)(3)(A)(iv) as a situation where an adversary is "compelled to attend trial and incur substantial travel expenses even

though it is known that the adversary has no personal knowledge of the dispute."[2] Other examples of what constitutes an "undue burden" include "untimely service, inability to appear, inability to produce the requested documents or things, failure to identify items requested, or excessive cost." Moore's Federal Practice § 45.04[3][b] (citations omitted).

*Depositions of Opposing Counsel*

■ Depositions of opposing counsel are disfavored. *United States v. Yonkers Board of Education*, 946 F.2d 180, 185 (2d Cir. 1991). However, courts will permit "the deposition of opposing counsel only upon a showing of substantial need and only after alternative discovery avenues have been exhausted or proven impracticable." *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp., ITT*, 125 F.R.D. 578, 593 (N.D.N.Y.1989). The Eighth Circuit has allowed depositions of opposing counsel where "the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327. *See Gould v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 n. 2 (2d Cir.1987) (the *Shelton* Court's concern with the deposition of opposing counsel is "generally well taken").

**DISCUSSION**

Merrill Lynch argues that Orange County's subpoena should be quashed because it places an undue burden on Merrill Lynch, is cumulative of previous discovery,[3] not calcu-

---

1. Fed.R.Civ.P. 45(c)(3)(a)(i), (iii), and (iv). Fed.R.Civ.P. 45(c) was amended in 1991. The Advisory Committee's notes state that "[t]his provision is new and states the rights of witnesses. It is not intended to diminish rights conferred by Rules 26–37 or any other authority."

2. Moore's Federal Practice § 45 App.08[2] (Committee Note of 1991 to Amendment). The words "undue burden" in Rule 45(c)(3)(A)(iv) replace the pre-1991 language of "unreasonable and oppressive." 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 at 72 (1995). This change is semantic only and not

meant to change the existing law. *Id.* (*citing* the Advisory Committee Note to the 1991 amendment to Fed.R.Civ.P. 45).

3. Merrill Lynch cites the following list of previous discovery:

a) from Merrill Lynch and its counsel, all nonprivileged documents concerning the negotiation of the Agreement, documents constituting evidence of payment for the Notes by Appaloosa to Merrill Lynch, and documents evidencing Merrill Lynch's payment of interest and legal fees pursuant to the Agreement;

lated to lead to discovery of relevant evidence in a proof of claim proceeding and the oral testimony is protected under the work product doctrine.

I find that Merrill Lynch has not met its burden of proof on the issue of whether the subpoena subjects Merrill Lynch to an "undue burden" as provided for in Fed.R.Civ.P. 45(c)(3)(a)(iv). The mere assertion that a subpoena is burdensome, without evidence to prove the claim, cannot form the basis for an "undue burden" finding. As Orange County avers, without opposition, at most, each deposition will take one day and will be held in the city where the deponents have their offices.

Merrill Lynch also argues that the witnesses are "nonparties," requiring a greater showing of relevance of their testimony than for parties before an examination is ordered. The learning is that weight should be given to nonparty status in assessing the burden of compliance with a discovery request. *See Wertheim Schroder & Co. v. Avon Products. Inc.,* 1995 WL 6259 (S.D.N.Y. Jan.9, 1995) (*citing Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993); *Jack Frost Laboratories, Inc., v. Physicians & Nurses Manufacturing Corp.,* 1994 WL 9690 at *2 (S.D.N.Y. Jan.13, 1994).) I do not reach the question whether Merrill Lynch or its attorneys are "nonparties." That is the issue before the California Court. However, discovery should not be denied merely on nonparty status. *Wertheim,* 1995 WL 6259 at *6. "A better approach is for the court to take steps to relieve a nonparty of the burden of compliance [by] ... compensating a nonparty [who] would otherwise incur substantial expense." *Id.* In any event, Merrill Lynch has not met its burden either as a

party or a nonparty because they failed to offer evidence of why the depositions would be an undue burden.

In addition, I find Merrill Lynch's argument that the noticed depositions will only reveal cumulative and irrelevant information unpersuasive. Orange County asserts that previous discovery has revealed that counsel to Merrill Lynch may have been heavily involved in the negotiation of the agreement between Merrill Lynch and Appaloosa. If counsel to Merrill Lynch bore the responsibility for negotiating the agreement with Appaloosa, their depositions might be relevant on the issue of whether Merrill Lynch holds an interest in the Notes.

I find that Merrill Lynch's argument that depositions of its counsel would be cumulative and unnecessary unsupported on the record before me.

Next, Merrill Lynch argues that I should be reluctant to allow Orange County to depose its counsel. Although courts should be careful in allowing depositions of opposing counsel, there are situations in which the taking the deposition of adversary counsel would be appropriate. *Gould,* 825 F.2d at 680 (*citing Shelton,* 805 F.2d at 1327). "This is usually where the attorney is a fact witness or an actor, the creator of nonprivileged records, or the attorney's advice is used by the client as a defense." *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp., ITT,* 125 F.R.D. 578, 593 n. 4 (*citing N.F,A, Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85 n. 2 (M.D.N.C.1987).)

I find that here, depositions of counsel for Merrill Lynch are appropriate. At issue is not what Merrill Lynch's counsel learned as a result of the agreement between

b) from Merrill Lynch and its counsel, documents concerning the initial pricing of the Notes, purchases and sales thereof, Merrill Lynch's services as an underwriter, drafts of offering memoranda in connection with the Notes, and any communications regarding the notes between Merrill Lynch and the County, other underwriters and broker/dealers, and financial and legal advisers;

c) from Appaloosa and Belmont, multiple document productions concerning the Agreement and the Transaction;

d) the depositions of (a) the primary Merrill Lynch business person involved in the negotiation of the Agreement (as a rule 30(b)(6) witness) and (b) the Merrill Lynch officer who executed the Agreement on behalf of Merrill Lynch; and

e) the depositions of (a) two Appaloosa business persons who negotiated the Agreement on behalf of Appaloosa, (b) the attorney who represented Appaloosa in the negotiation of the Agreement and (c) a principal of Belmont.

Appaloosa and Merrill Lynch, or what litigation strategies counsel to Merrill Lynch is planning to use, but rather the behavior and role counsel to Merrill Lynch played in the negotiations surrounding the agreement and in this litigation. Although Merrill Lynch argues that the discovery Orange County seeks to gain is irrelevant or may be privileged, I have already determined that these depositions are relevant to the litigation in the California Court and, if a privilege issue arises at the depositions, it will be addressed question by question. *See Niagara,* 125 F.R.D. at 594 ( "an attorney cannot avoid a deposition by asserting that [there is] . . . no relevant, nonprivileged information . . . at a minimum, the attorney must submit to a deposition" and any lack of knowledge will be tested and any claimed privilege will be placed on the record).

Finally, Merrill Lynch asserts that the subpoenas should be quashed based on the attorney work product doctrine and attorney-client privilege. A subpoena that requires disclosure of privileged material, where no exception applies, must be quashed. Fed. R. Civ. Proc. 45(c)(3)( )(iii); *see also id.* 26(c)(7). However, it is unclear whether the deposition questions here will seek privileged information. I will make a determination, on the record, during deposition, if an objection is made. *See* Moore's Federal Practice § 45.04[3][b] ("quashing a subpoena ad testificandum is very rare because until the witness is asked specific questions, there is usually nothing on which to base a motion to quash"). *See also In re Kelton Motors, Inc.,* 130 B.R. 183, 184 (Bankr.D.Vt.1991) ("although Trustee may object to questions during the deposition that are indeed protected by the work product doctrine, Trustee's defensive posture [in seeking a protective order] is premature").

Accordingly, Merrill Lynch's Motion to Quash is denied.

On April 7, 1997, after the argument of this motion, Judge John E. Ryan, of the California Court, denied Orange County's motion to compel discovery from Merrill Lynch and Appaloosa. *See In re Orange County,* No. 94-B-22272 (Bankr.C.D. Cal. April 7, 1997). He prevented discovery of certain tangible, documentary evidence, including draft pleadings, cover letters and memoranda, and billing invoices, under the work product privilege. Judge Ryan, in finding a privilege, held that Merrill Lynch and Appaloosa had a "common interest" in the litigation.

In denying Merrill Lynch's Motion to Quash, I do not question Judge Ryan's sound judgment. However, this motion seeks to prevent intangible, oral testimony. I cannot decide, on the papers before me, without knowing the questions Orange County will ask, whether a work product privilege or an attorney-client privilege exists.

There appear to be many questions that will require rulings from me. Therefore, the examinations will take place in the courthouse, under my supervision. The witnesses and counsel are directed to appear at the Bankruptcy Court at 9:00 a.m. on May 19 to start the depositions.