**In re BIOVAIL CORPORATION SECURITIES LITIGATION.**

No. 03 CV 8917.

United States District Court, S.D. New York.

Nov. 30, 2007.

---

Sanford P. Dumain, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, Steven B. Singer, Bernstein, Litowitz, Berger & Grossmann, LLP, for plaintiffs.

Martin F. Cunniff, Howrey, LLP, for defendant Biovail.

Gary Svirsky, O'Melveny & Myers, LLP, for Banc of America Securities, LLC.

Stuart M. Sarnoff, Morgan Lewis & Bockius, LLP, for Arthur Cohen.

Joseph Alexander Lawrence and Carl H. Lowenson, Jr., Morrison & Forster, LLP, for David Maris.

Yosef J. Riemer, Kirkland & Ellis, LLP, for Gerson Lehrman Group and Gerson Lehrman Group Brokerage Services.

Martin Klotz, Willkie, Farr & Gallagher, LLP, for S.A.C. Capital Advisors.

Partha P. Chattoraj, Quinn, Emanuel, Urqhart, Oliver & Hedges, LLP, for Emanuel Goldberg, M.D.

## OPINION & ORDER

OWEN, District Judge.

Defendant Biovail, in this proposed stockholders' class action, moves to compel compliance with subpoenas Biovail issued to various non-parties, including Steven A. Cohen, Arthur Cohen, Timothy McCarthy, S.A.C. Capital Advisors LLC, S.A.C. Capital Associates, S.A.C. Capital Management LLC, S.A.C. Healthco and Sigma Funds, David Maris, Gerson Lehrman Brokerage Services, LLC, Gerson Lehrman Group, LLC, and Dr. Emanuel Goldberg. The motion to compel is denied for the reasons set forth below.

It is plaintiffs' allegation in its New York federal action that false and misleading statements by Biovail during the class period artificially caused a false increase in Biovail's share price, which plummeted once investors learned the truth.[1] Biovail, however, in two subsequent actions in New Jersey,[2] addressing the concededly identical time periods and stock-price movements,[3] asserts that it was not fraud on its part that caused the downward stock movement, but rather, very simply stated,[4] that its share price was driven down by a conspiracy of certain hedge funds and stock research firms, including the subpoenaed parties, to publish major damaging false articles in the press about Biovail to drive down its stock price so the conspirators could make money using a short-selling scheme.[5] Biovail says it needs discovery from certain non-parties to prove the conspiracy and thereby exonerate itself. The non-parties counter that the information requests are neither relevant nor necessary and are highly and unlimitedly and inappropriately burdensome.

1. For further background, see *In re Biovail Corp. Securities Litigation*, 247 F.R.D. 69, 2007 WL 259933 (S.D.N.Y.2007).

2. *See infra* n. 5.

3. In correspondence, counsel for Biovail put it this way: "The dissemination of false information about Biovail [by outside third parties] occurred at *precisely* the same time that Plaintiffs in this action allegedly suffered losses (*i.e.,* February 7, 1003 and March 2, 2004—the putative class period)." E–Mail from Rebecca Fine to Martin Klotz, April 21, 2006 (emphasis added).

4. *See id.* ("[The conspiracy's] activities are directly relevant to Biovail's defense of the federal securities class action because they relate to whether decreases in the price of Biovail's stock during the Class Period were caused by Biovail's alleged misstatements (as Plaintiffs in this action allege) or resulted instead from the acts of the conspiracy.").

5. These allegations curiously first appeared in a subsequently filed New Jersey RICO action by Biovail against many of the parties from whom it seeks discovery here, now removed to Federal Court, *Biovail Corp. v. S.A.C. Capital Mgmt., LLC,* 2:06–cv–1625–HAA–SDW (D.N.J.) ("New Jersey RICO Action"). They then appeared in a federal shareholder suit against those same parties, *Del Giudice v. S.A.C. Capital Mgmt., LLC,* 2:06–cv–1413–HAA–MF (D.N.J.) ("Del Guidice"), copied virtually verbatim from Biovail's RICO case just mentioned and financed by Biovail all the way down to the press releases. The thinking behind Biovail's decision to pursue these out-of-state actions to assert these claims, as opposed to pleading them as affirmative defenses here, is yet to be explained.

■ Basically, to be discoverable, information sought must be relevant to a claim or defense of any party. *See* Fed.R.Civ.P. 26(b)(1). In addition, where, as here, it is sought from third parties, the Court must weigh the probative value of the information against the burden of production on said non-parties. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48–49 (S.D.N.Y. 1996); Fed.R.Civ.P. 45(c)(2)(B) (stating that non-party status entitles witnesses to consideration regarding expense). Whether a subpoena imposes an "undue burden" depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. *See Concord Boat Corp.* at 49.

■ Consequently, I conclude that for purposes of Biovail defending *this* action, the virtually limitless financial and other information Biovail seeks is unnecessary and irrelevant, at least in *this* case, and the burden these demands place on the subpoenaed non-parties and diversion of their staff to provide it far outweighs any probative value of the information. To establish its "source-of-fault" defense above, Biovail does not need to prove the existence of any conspiracy. Biovail simply needs to establish that numerous statements by said outsiders caused its share price to "tank," and 1) it is already in a position to prove all of that, and 2) if those statements *were* false, it can prove their falsity from *its* own records. Thus Biovail does not need discovery from these non-parties to prove whether or not the reports of David Maris, for example, are false. Either they are or they aren't. Given that the discovery as sought could cost millions of dollars, *see* Riemer Declaration at 3–4, the burden of production far outweighs any probative value.

Furthermore, I get no suggestion of evidentiary support for Biovail's proposed defenses, other than that *it* says they are well-founded. For example, puzzlingly troublesome for any court now asked to give weight to Biovail's plethora of attacks on alleged co-conspirator defendant David Maris is that Biovail, after smothering him in their New Jersey RICO Action complaint and submissions during the recent and sharply contested hearings before me,[6] suddenly—to this Court's surprise—in a voluntary dismissal *released Maris* from all claims asserted in the New Jersey RICO Action "known or unknown … from the beginning of time …." September 10, 2007 Settlement Agreement, Ex. A.[7] Why was Maris released when the allegations that Maris created a picture of Biovail that was "materially false and misleading" are spread over fourteen pages of Biovail's New Jersey RICO Action complaint, at 43–56, and later copied almost verbatim in the complaint which Biovail furnished another law firm for filing on behalf of a then-yet-to-be-found plaintiff named Del Guidice? To take another example, Biovail alleges in its New Jersey RICO Action that, as part of the short-selling conspiracy, Maris issued "false and misleading" reports concerning the impact on Biovail's financial results from a truck accident. At first, in a press release dated October 3, 2003, Biovail stated that, as a result of the accident, "it can be anticipated that there could be a fourth quarter 2003 negative impact of $15 [million] to $20 million." Maris, however, one of the alleged co-conspirators, then opined that the truck was "empty". Following this, on March 3, 2004, five months after its first press release, Biovail occasioned another press release now stating that "the actual loss from the accident was determined to be $5.0 million."[8] Since all Biovail's statements of alleged loss and value were within the sole documentability of Biovail from its records, these turnabouts will at some point in time presumably be the subject of some intense scrutiny.

---

**6.** I will have more to say about these and other pending proceedings hereafter.

**7.** While Maris was given a purportedly *"total"* release by Biovail, the terms of the release do not apply this to Del Guidice. *See supra* n. 5. This strikes me as overly formalistic, observing that Rule 17(a) of the Federal Rules of Civil Procedure requires that "every action shall be prosecuted in the name of the real party in interest."

**8.** The Court observes that the contents of the truck and its value should be readily discernable from bills of lading or other related records.

Biovail's document requests are also far too broad. With few exceptions, the subpoenas are either unlimited in time or at least not addressed to the proposed class period. For instance, one subpoena requests "[a]ny and all documents concerning Biovail, any Biovail subsidiaries, any current or former employees and any current or former shareholders, including, but not limited to, communications relating to, referring to, or referencing Biovail, any Transaction in Biovail stock, or any draft or final versions of research reports, analyst reports or bulletins." SAC Healthco Subpoena, Request 1. Another requests "any and all documents concerning or reflecting communications with the following [thirty-nine] companies." *Id.*, Request 7. This, at a minimum, makes the broad scope of discovery sought here unduly burdensome on many subpoenaed parties at many times. *Accord Concord Boat Corp.* at 50 ("[T]o the extent a subpoena sweepingly pursues material with little or apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable.").

While the Court is aware that the discovery Biovail now seeks might be of use in the companion actions proceeding in New Jersey, where discovery has been stayed, the Court is mindful that this motion must be assessed against Biovail's previous obvious violation of an agreed-upon protective order whereby Biovail wrongfully used documents obtained during discovery in this case and limited to use in this case to initiate and pursue the parallel litigation in New Jersey. *See In re Biovail Corp. Securities Litigation,* 247 F.R.D. 69, 2007 WL 259933 (S.D.N.Y.2007). Further, Biovail could have made the non-parties from whom it now seeks discovery parties to this action. *See* Fed.R.Civ.P. 14(a). The record reflects that Biovail considered this option, *see* June 29, 2007 Tr. at 1406:22–1407:5 (Bowe testimony), but instead chose to pursue separate action in New Jersey, emphasizing in its New Jersey RICO Action complaint that it does "not believe that ... the parties in the other pending judicial proceedings [namely, this action] should be joined in [New Jersey]." New Jersey RICO Action, Compl. at 90. Biovail cannot have it both ways. It chose to pro-

ceed by separate litigation. It cannot now have combined discovery. Where the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 n. 17, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Accordingly, I find that the requested discovery is unnecessary and irrelevant, and production would be a wholly improper high burden on the non-parties. Biovail's motion to compel compliance with its subpoenas is therefore denied.

So ordered.