CELANESE CORPORATION and Fiber Industries, Inc., Petitioners,

v.

E. I. duPONT de NEMOURS & COMPANY, Respondent.

In re YARN PROCESSING PATENT VALIDITY LITIGATION.

CELANESE CORPORATION and Fiber Industries, Inc., Plaintiffs,

v.

LEESONA CORPORATION et al., Defendants.

Misc. No. 82, MDL Docket No. 82, Civ. A. No. 71–1026–Civ.

United States District Court, D. Delaware.

Jan. 31, 1973.

---

9. This court does not have, and has not been furnished the citation for the Federal Supplement.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del.,

and Edward S. Irons and Mary Helen Sears, of Irons, Sears & Santorelli, Washington, D. C., of counsel, for petitioners.

James M. Tunnell, Jr. and Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and W. Philip Churchill, of Fish & Neave, New York City, of counsel, for respondent.

## OPINION

LATCHUM, District Judge.

Celanese Corporation and Fiber Industries, Inc. ("petitioners") have moved under Rules 37 and 45, F.R.Civ.P., to compel compliance by E. I. duPont de Nemours & Co. ("DuPont") with a subpoena *duces tecum* issued out of this Court on December 7, 1972 in aid of pre-trial and trial proceedings in Civil Action No. 71–1026–Civ–CA, a part of MDL Docket No. 82,[1] pending in the United States District Court for the Southern District of Florida. The subpoena[2] was returnable on December 27, 1972.

The relevant background facts are as follows: Petitioners are declaratory judgment plaintiffs in Civil Action No. 71–1026–Civ–CA. That action seeks a declaration of invalidity, unenforceability and noninfringement of nine United States patents[3] variously assigned to Leesona Corporation ("Leesona") and Lex-Tex, Ltd., Inc. ("Lex-Tex"). The latter companies are joint defendants in the Florida case with The Permatwist Company ("Permatwist"), a partnership of four individuals. The patents in suit relate to the apparatus and methods for texturing synthetic yarns by what is called "doubleknit" or "false twisting". This involves twisting and heat setting the yarns in one direction and then in the other to make them crinkly. Fabric knits from such yarns are sometimes referred to as stretch fabrics. All of the patents involved have filing dates prior to 1958.

DuPont is not a party to any of the Florida litigation. However, DuPont's business over the past years has been the production and sale of raw synthetic yarns, sometimes called "feed yarns", to companies including many of the litigants in MDL Docket No. 82, who, in turn, converted such feed yarns to the crinkly state by false twisting them. In order to render better service to its customers who engage in false twisting, DuPont has from time to time in the past engaged in experimental studies with Leesona, as well as with some of Leesona's licensees, so that the best results could be achieved from using DuPont's feed yarns.

As early as April 1972, Stephen Murphy, a house patent counsel for Celanese, approached DuPont with the request that DuPont produce documents it might have which would be relevant to the validity of the false twist patents which are under attack and owned by Leesona and Lex-Tex and licensed to the industry. DuPont expressed its willingness to cooperate, provided a reasonably worded document request could be worked out informally with DuPont and thus incorporated in a subpoena. DuPont heard nothing further from Celanese until December 6, 1972 when its local counsel telephoned DuPont to indi-

1. MDL Docket No. 82 includes some 35 separate actions which had been pending in four districts and which were transferred to the Florida District Court by the Judicial Panel on Multidistrict Litigation. In Re Yarn Processing Patent Validity Litigation, 341 F.Supp. 376, 385 (Jud. Pan.Mult.Lit.1972).

2. The subpoena was modified in minor respects by a letter of petitioners' counsel dated December 17, 1972 and received by DuPont on December 22, 1972.

3. U.S. Patents 2,803,105; 2,803,108; 2,803,109 ("single heater patents"); 3,077,724; 3,091,912 and 3,472,011 ("double heater patents"); 2,791,086; 3,044,247; 3,134,218 ("spindle patents").

cate that a subpoena *duces tecum* was about to be served. The subpoena was served on DuPont late in the afternoon on December 7, 1972. The subpoena includes 22 categories of documents and required DuPont to appear and produce the documents called for at 10:00 A.M. on December 27, 1972. Upon receipt of the subpoena DuPont assigned employees to start collecting the documents. Upon further study of the document list, DuPont's best estimate was that it would take two-man years of searching to comply fully with the subpoena. With this realization, DuPont contacted the petitioners' counsel in a good-faith effort to work out some reasonable limitation upon the scope of the 22 categories of documents. The matter was discussed at some length both in telephone and personal conferences. DuPont was given hope that reasonable limitations on the scope of the subpoena might be agreeable. It was not, however, until Friday, December 22, when it received a letter from petitioners' counsel dated December 17, 1972, that it finally appeared that petitioners would not limit the scope of the subpoena in any major respect or voluntarily grant the amount of time DuPont believed that it needed to complete the collection task. Thus, on December 27, 1972 after the Christmas holidays,[4] DuPont's representative, Dr. Harold Harr, appeared for his deposition and produced some 170 documents —those which it had been able to assemble before the subpoena's return date.

The present motion was then filed on January 7, 1973.[5] It sought an order (1) directing DuPont to comply fully with the subpoena modified in minor respects by counsel's letter dated December 17, 1972, (2) directing DuPont to show cause why it should not be held in contempt for its failure to respond fully to the subpoena and (3) awarding the petitioners reasonable costs and attorneys' fees expended in presenting the motion.

DuPont has appeared and resisted the present motion.

■ The petitioners contend that Rule 45(d) required DuPont to file objections to the subpoena on or before December 27, 1972—the date specified in the subpoena for compliance—and since it failed to do so, all of its objections were then waived and DuPont is now without standing to be heard. In other circumstances this contention might be well-taken for the very simple reason that a party who fails to abide by the procedural rules governing litigation does so at his own risk and peril. Under the circumstances of this case, however, a strict application of this principle does not appear to be justified —particularly since it would foreclose DuPont from being heard on the contempt order presently sought against it. This is so for a number of reasons: First, in view of Mr. Murphy's discussion with DuPont as early as April 1972, DuPont reasonably expected that it would be afforded with an opportunity to participate informally in working out a document request for a later subpoena which would not be too unreasonable and oppressive in scope and time period covered. This was not done.

Second, even after DuPont was served with the subpoena because of discussions with petitioners, it was led to believe that limitations could be agreed upon to restrict the document search to reasonable proportions without Court interference. It was not until receipt of the December 17 letter from petitioners' counsel on December 22, just before the Christmas holidays, that this hope was shattered. DuPont's offices were closed until the morning of December 27, 1972—too late, DuPont says, to file an objection and obtain a court appearance before the 10:00 A.M. return time for

---

4. DuPont was closed from December 22 to December 27, 1972.

5. Oral argument on the motion was heard on January 16, 1973.

the subpoena. Consequently, DuPont's representative appeared for the deposition and produced the documents that had been collected to date.

Third, a review of the documents sought indicates they are very broad both in tenor and time period covered and in the face of DuPont's undisputed estimate that it will take two-man years to comb its files in search of the requested documents, it is completely unreasonable to have expected full compliance with the subpoena between the time of service and its return date even without any hope of its limitation by agreement.[6]

Fourth, at the time of the deposition and production, DuPont's counsel stated DuPont's objections on the deposition record. Of course, DuPont could have filed its objections as to the scope and time when it was served and then attempted to agree with petitioners on any limitations it believed were needed. Hindsight now shows that this would have been the wiser course. However, the Court believes that DuPont's failure to object first and negotiate later was in large part petitioners' fault. Based on earlier discussions with petitioners' house patent counsel, DuPont was led to believe that a reasonable document request satisfactory to it could be agreed upon readily. In this respect it now appears DuPont was badly mistaken. While the Court does not condone a litigant's failure to object to a subpoena which it considers unreasonable and oppressive within the time limited by the rules, it cannot conclude on the present record that DuPont's failure to follow the rules was deliberate and willful so as to time-bar it from being heard in opposition to the petitioners' present motion.

Turning now to DuPont's position, no real objection is made to producing the documents demanded in Categories 1, 2, 3, 7, 11, 16, 17 and 20. The documents in these categories are those which existed before January 1, 1958. They generally refer to communications, memoranda and agreements in DuPont's control relating to the false twisting of synthetic yarns and involving the parties or their licensees in the Florida litigation. DuPont will be required to comply with the subpoena *duces tecum* with respect to these categories.

■■■■ DuPont objects to producing the documents demanded in Categories 4, 9, 10, 12, 13, 14 and 15. These categories refer to documents that are not limited in time and call for documents which have come into existence since January 1, 1958. The petitioners' moving papers before me show that they moved the Florida District Court for leave to obtain documentary evidence stating: "[d]iscovery to date has developed evidence indicating that substantial quantities of documents relevant at least to the issues of patent invalidity and noninfringement in this case are in possession of" DuPont. Petitioners' moving papers here also state that DuPont is in possession of a significant amount of "documentary evidence relevant to the issues of litigation. A part of this evidence constitutes prior art and/or evidence of ordinary skill in the art at the time of the alleged invention of the patents in suit." Concentrating upon these assertions, DuPont argues that those documents which have come into existence since January 1958 are completely irrelevant to the validity of the patents involved—all of which issued prior to that later date—and have no bearing on the state of the prior art. Thus, being wholly irrelevant, DuPont contends that a search for and production of those documents would be unreasonable and oppressive. While this argument facially appears to have merit when petitioners' moving papers are examined, this Court is not in a knowledgeable posture

---

6. DuPont had only eleven working days to search for the documents between service of the subpoena and its return day.

to sustain DuPont's objections. The subpoena was issued under the authority of Rule 45(d)(1). That rule refers back to Rule 26(b) for the scope of examinations permitted. Rule 26(b) in substance permits "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." This Court, thus, must act without the benefit of the foreign pleadings and is required to heed the admonition that "local courts whose only connection with a case is the supervision of the taking of depositions ancillary to an action elsewhere should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 425 (C.A. 1, 1961); see Application of Zenith Radio Corp., 1 F. R.D. 627, 630 (E.D.Pa.1941). Other representations have been made here that the Florida litigation is not limited to patent questions but involves antitrust issues including Leesona's counterclaim against petitioners. In the light of these representations, the hesitancy with which this ancillary court should act in foreclosing discovery based on irrelevancy and the fact that rules of discovery, including Rules 45 and 26, envision generally unrestricted access to sources of information, the Court will require DuPont to produce the documents in Categories 4, 9, 10, 12, 13 and 15.

■ DuPont objects to Categories 5 and 6 which ask for all documents prior to 1958 that relate to any wet or dry heat processing of any yarns, fabrics or garments made of nylon, polyester, acrylic polymer or cellulosic fibers. These categories DuPont says are so broad as to include documents relating to ironing a shirt, or washing a fabric in boiling water which obviously have nothing to do with the false twist patents involved in the Florida litigation. The Court agrees that these demands for documents are extremely broad but if petitioners want the search to be this broad, they will be required to pay the expenses thereof.

■ DuPont objects to Category 18 which asks for the production of any abandoned U.S. patent applications filed by DuPont before January 1, 1958 relating to any aspect of false twisting of synthetic yarns. DuPont points out that abandoned applications are kept secret by the Patent Office and there is no reason for requiring DuPont to reveal such abandoned applications as they could afford no possible basis as prior art. The Court will require the production of these documents under a protective order which will limit the showing of the documents only to petitioners' counsel.

■ Category 8 asks for all documents prior to 1954 relating to a scientific explanation of the thermal behavior of nylon and other synthetic materials. DuPont objects that this category is too broad as it would require the production of all of DuPont's extensive nylon research in the 1930's and 1940's and the demand is not limited to fibers or yarns. This category of documents will be ordered produced limited to synthetic fibers and yarns.

■ DuPont objects to Category 19 which asks for all documents which relate to or describe the basis upon which nylon yarns or fibers were allocated to customers up to January 4, 1954. These documents will be ordered produced in the manner hereinafter explained unless DuPont within 15 days from the date hereof elects to produce a person informed of the matter to orally testify as to the manner in which DuPont allocated nylon yarns and fibers to customers for the period in question.

Categories 21 and 22 request all documents relating to or constituting information or reports prepared with respect

to textile machinery shows held during the years 1946 through 1960. DuPont urges that this request for documents be limited to those documents in the possession of the DuPont Textile Fiber Department. As of this time, the order shall be so limited for ease of search.

■ The Court is fully aware that the documents which will be ordered produced, as indicated by the present record, are very numerous and the period covered extends over an inordinate number of years. The Court is also aware that the search and production of the broad category of documents will be time-consuming and expensive for DuPont which is not a party to the Florida litigation. The Court, therefore, will order that the search begin immediately, that the production be made weekly as the documents are collected, and that petitioners will be required to reimburse DuPont's reasonable expenses for the search and production. In order to keep and maintain some control of the progress and expense of the search and production, the Court will require a monthly report to be filed by DuPont showing generally the documents produced, the past expenses incurred and billed to the petitioners and the payments made by petitioners.

DuPont requests the Court to provide some assurance that the document search ordered will be a one-time operation as far as the Florida litigation is concerned. This Court, not having jurisdiction of the parties in the Florida litigation, can give no such assurance. Any application in this respect will have to await further developments in this Court.

Finally, the petitioners' request that they be allowed reasonable attorneys' fees and expenses incurred in connection with this motion will be denied.

Submit order.

