## In re HONEYWELL INTERNATIONAL, INC. SECURITIES LITIGATION.

### No. M8–85 WHP.

United States District Court,
S.D. New York.

Nov. 18, 2003.

---

Kathleen A. Herkenhoff, Milberg, Weiss, Bershad, Hynes & Lerach LLP, San Diego, California, for Plaintiffs.

Siobhan A. Handley, Orrick, Herrington & Sutcliffe LLP, New York, New York, for PriceWaterhouseCoopers.

Yosef J. Riemer, Kirkland & Ellis LLP, New York, New York, for Defendant Honeywell International, Inc.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Presently before this Court is plaintiffs' motion to compel production of certain documents in a putative securities class action styled *In re Honeywell International, Inc. Securities Litigation*, 00 Civ. 3605(DRD), pending in the District of New Jersey. The defendants in that action include Honeywell International, Inc. ("Honeywell") and several former directors of that company. The putative class of plaintiffs ("plaintiffs") allege in the underlying action that defendants made materially false and misleading statements about Honeywell's financial condition and results, the integration of its merger with AlliedSignal, Inc. ("Allied"), and its acquisition of Pittway Corporation ("Pittway").

On March 15, 2002, as part of a discovery barrage, plaintiffs served a subpoena on nonparty PriceWaterhouseCoopers ("PWC"). PWC was Honeywell's financial auditor during portions of the class period. The subpoena was issued from the Southern District of New York because PWC's New York office performed the Honeywell audits. Plaintiffs contend that because Honeywell's fraud was effectuated through accounting machinations, the integrity and accuracy of Honeywell's accounting practices, financial statements and internal controls are squarely at issue.

In response to that subpoena, PWC produced approximately 63,500 pages of documents. Plaintiffs move this Court to compel production of certain categories of documents withheld by PWC from that production, while PWC cross-moves to quash the subpoena. Specifically, plaintiffs seek production of the following categories of documents: (1) an electronic version of PWC's workpapers for the 1999 and 2000 audits and quarterly reviews of Honeywell financial statements; (2) all of PWC's "permanent" and "carryforward" files for its Honeywell engagements; (3) all workpapers for PWC's 1999 audits of Pittway's financial statements; (4) all correspondence, memoranda, electronic documents, e-mail and other documents concerning Honeywell for the period of January 1, 1999, through March 31, 2001; (5) all consulting workpapers and documents concerning Honeywell, Pittway or Allied for the period of January 1, 1999, through March 31, 2001; (6) all documents relating to PWC's independence in Honeywell engagements during the period June 20, 1999 through March 31, 2001; (7) PWC's document retention and destruction policies; and (8) all documents identified on PWC's privilege log. Since both attorney-client privilege and attorney work product protection were asserted by Honeywell, these privileges are defended by Honeywell, not PWC.

For the reasons stated below, plaintiffs motion is granted in part and denied in part, and PWC's motion is granted in part and denied in part. PWC is directed to comply with plaintiffs' subpoena in accord with this Memorandum and Order.

### Electronic Version of PWC's Workpapers

■ Plaintiffs seek an electronic version of PWC's audit workpapers for the 1999 and 2000 audits, and quarterly reviews of Honeywell's financial statements. Alternatively, plaintiffs seek a complete hardcopy set of the workpapers produced in the order they are kept in the ordinary course of business. There is no dispute that PWC has produced hardcopies of the workpapers that plaintiffs are seeking. However, plaintiffs claim that PWC did not produce the workpapers in the manner in which the documents are maintained in the usual course of business, namely in an electronic form. Specifically, plaintiffs argue that the workpapers were produced in a way that makes it impossible to determine which attachment belongs with a particular workpaper. Plaintiffs complain that they are unable to review the workpapers as they are kept in the ordinary course of business because they cannot read a specific workpaper and then refer to any attachment it references.

PWC contends that it produced all of the workpapers in hardcopy, and that plaintiffs should be required to pay for any other

297

expense imposed on the non-party PWC. PWC also argues that it has addressed plaintiffs' concerns by providing a complete index of workpapers and attachments, as well as annotated charts that reference the indices and production numbers for corresponding workpapers and attachments. PWC's main argument, however, is that electronic copies of its workpapers are only accessible with the aid of its proprietary software, and therefore any production of the electronic files would reveal PWC's trade secrets.

This Court finds that PWC's prior production of its workpapers is insufficient because they were not produced as kept in the usual course of business. (Transcript of Oral Argument, dated Aug. 28, 2003 ("Tr."), at 10–15.) Moreover, PWC has not provided plaintiffs with an adequate means to decipher how the documents are kept in the usual course of business. (Tr. at 10–15.) Under Rule 34(b) of the Federal Rules of Civil Procedure, PWC is obligated to produce its workpapers in their electronic form.

At oral argument, this Court directed the parties to meet and confer concerning the most efficient manner in which PWC could produce the workpapers electronically, and invited the parties to submit further memoranda on that issue. After reviewing the parties' additional submissions, this Court directs PWC to produce electronically its workpapers by either: (1) producing a copy of its workpapers on CD–ROMs that could be viewed using commercially-available software; or (2) producing a copy of its workpapers on CD–ROMs that could be viewed using PWC's proprietary software, as well as producing the proprietary software to the extent it is necessary to view the workpapers.

PWC contends that the first option would be time-consuming and cost in excess of $30,000. It requests that this Court require plaintiffs to defray those costs. (Letter from Siobhan A. Handley, Esq., dated Sept. 9, 2003, at 2.) However, an offset or reimbursement on the part of plaintiffs is not warranted for two reasons: (1) if PWC desires to save time and money on its production it may opt for the second electronic production alternative, which PWC recognizes would not be time-consuming or excessively costly;[1] and (2) PWC could have avoided the added expense it now faces by producing the workpapers in electronic form at the outset, rather than choosing to produce hardcopies of its workpapers with hieroglyphic indices that render the workpapers essentially incomprehensible.

Finally, this Court declines plaintiffs' invitation to rule on whether PWC may convert some its workpapers to a PDF file format to protect their integrity. (Letter from Kathleen A. Herkenhoff, Esq., dated Sept. 8, 2003, at 7–8.) At this stage of discovery, this Court does not deem it necessary to direct PWC to adopt any particular procedure.

*PWC's Privilege Log*

In their initial brief in support of their motion to compel, plaintiffs sought production of all documents on PWC's privilege log since there is no basis for any attorney-client privilege for communications between PWC and Honeywell, and because the preeminent business purpose of the audits renders work product protection inapplicable. Since the privileges asserted in PWC's privilege log belong to Honeywell, it is Honeywell that opposes plaintiffs' motion on this issue.[2]

1. PWC's concerns regarding the proprietary nature of its software are unavailing. As PWC acknowledged at oral argument, there is a Stipulated Confidentiality Order in effect in the New Jersey litigation, which would encompass PWC's production of its proprietary software. (Tr. at 9–10.) That protective order obviates PWC's proprietary software concerns. *See In re Livent, Inc. Noteholders Sec. Litig.,* No. 98 Civ. 7161(VM)(DFE), 2003 WL 23254, at *2 (S.D.N.Y. Jan. 2, 2003) ("The Court need not reach the issue of whether KPMG's audit materials constitute trade secrets because the Confidentiality Order ... will serve to protect any proprietary information. contained in KPMG's audit manual

and materials."). In addition, plaintiffs are not in the auditing business and do not otherwise compete against PWC. Thus, the concern that PWC's proprietary software will be acquired by one of its rivals and used to its competitive disadvantage is de minimis.

2. Honeywell has standing to assert and defend its privilege regardless of the fact that the documents at issue are PWC documents. The client is the holder of the privilege, and must decide when to assert or waive the privilege. *Application of Sarrio, S.A.,* 119 F.3d 143, 147–48 (2d Cir.1997).

Honeywell offers no support for the assertion of attorney-client privilege in PWC's log, and as a result fails to satisfy its burden to establish the privilege. *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.1987) (proponent of privilege bears the burden of proving its application). Even if Honeywell had attempted to support the application of the attorney-client privilege, however, it would have failed because the privilege does not extend to communications between a company and its accountants or auditors. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 818–20 & n. 15, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). Therefore, any attorney-client privilege attaching to a Honeywell communication was waived when that communication was conveyed to third-party PWC. *In re Willkie Farr & Gallagher,* No. M8–85 (JSM), 1997 WL 118369, at *3–4 (S.D.N.Y. Mar.14, 1997).

■ The work product doctrine is distinct from, and broader than, the attorney-client privilege. *See United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In contrast to the attorney-client privilege, which is intended to encourage full disclosure by the client, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

"Under Rule 26(b)(3) [of the Federal Rules of Civil Procedure], three conditions must be satisfied in order to establish work product protection. The material in question must: (1) be a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 41 (S.D.N.Y.1984); *accord Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.,* No. M8–85 (WHP), 1999 WL 378337, at *5 (S.D.N.Y. June 10, 1999). Rule 26(b)(3) expressly provides that a party's "representative" may include an "attorney, consultant, surety, indemnitor, insurer, or agent." The

burden of establishing all three elements of the work product doctrine rests with the party invoking it. *See von Bulow,* 811 F.2d at 144; *Resort of World, N.V. v. Clarendon Am. Ins. Co.,* No. 96 Civ. 1752(JSR), 1997 WL 739586, at *1 (S.D.N.Y. Nov.25, 1997).

■ Once a document is deemed to be covered by the work product privilege, it is discoverable only upon a showing that the requesting party has a "substantial need" for the materials to prepare his case and that the party "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Opinion work product, defined as "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," is afforded heightened protection. Fed.R.Civ.P. 26(b)(3); *accord Upjohn Co. v. United States,* 449 U.S. 383, 398–402, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Skillsoft,* 1999 WL 378337, at *6.

■ In their moving papers, filed on July 15, 2003, plaintiffs rely on two versions of the PWC privilege log, the May 2, 2003 privilege log and the May 27, 2003 supplemental log, to argue that attorney work product protection is inapplicable. Honeywell and PWC also rely on these versions of the log to support their argument that certain documents are protected by the work product doctrine. However, on August 8, 2003—two days after Honeywell and PWC filed their opposition to plaintiffs' motion to compel—PWC served a third version of its privilege log. (Pls.' Reply at 1 n. 1.) Notably, the August 8 log engrafted an assertion of attorney work product protection for certain documents previously identified as protected solely by the attorney-client privilege. The August 8 log is a transparent effort to conform PWC's privilege log with Honeywell's arguments in opposition to the motion to compel. Plaintiffs contend that Honeywell's failure to identify attorney work product as a specific ground for withholding each document effects a waiver of the attorney work product protection for those documents, and that the belated assertion of that privilege in the August 8 log is ineffective.

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party asserting a privilege or protection to "make the claim expressly and ... describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Further, the Advisory Committee Notes to the 1993 Amendments of Rule 26 state that a party's failure to notify other parties that it is withholding documents because of an assertion of a privilege or work product protection "may be viewed as a waiver of the privilege or protection." Local Civil Rule 26.2 also requires a party to "identify the nature of the privilege (including work product) which is being claimed."

Some courts in this district have found that a party waives work product protection if it fails to assert it in a privilege log, but instead asserts a different privilege. *See, e.g., Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 489–90 (S.D.N.Y.1993); *Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y.1990). The district court in *Bowne* held that:

> In its answering motion papers AmBase seeks to invoke the work-product rule for a variety of documents that were listed in its privilege log as subject only to the attorney-client privilege. This belated invocation of work-product protection runs afoul of the explicit requirements of S.D.N.Y. Civil Rule 46(e)(1) [predecessor rule to current Local Civil Rule 26.2], which provides that "[a]ny ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived." AmBase did not seek an extension and has not explained its failure to invoke the work-product rule for those documents on a timely basis. Accordingly, that ground must be deemed waived.

150 F.R.D. at 489–90 (second alteration in original). In *Carte Blanche*, the court held that "[i]n failing to specify work product as the particular privilege protecting its various documents, [non-party law firm], through its attorney ... waived the work product immunity for the documents." 130 F.R.D. at 32. The *Carte Blanche* court further acknowl-

edged that although the result of waiver is harsh, the federal and local rules' "importance should not be diminished by skirting their application when the results prove harsh to a party." 130 F.R.D. at 32. The Second Circuit has noted its preference that parties "raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998) (citing *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)).

Some courts in this district have applied a more flexible standard before finding waiver based on a violation of the federal or local rules. Those courts have reviewed "the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties." *AFP Imaging Corp v. Philips Medizin Sys.*, No. 92 Civ. 6211(LMM) (THK), 1993 WL 541194, at *3 (S.D.N.Y. Dec. 28, 1993); *accord RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587(PKL), 2003 WL 41996, at *3 (S.D.N.Y. Jan.6, 2003).

Utilizing either the *Bowne* standard or the more flexible *AFP Imaging* standard, this Court finds that waiver is warranted on the particular facts and circumstances of this case. Twice in May 2003, Honeywell interposed the attorney-client privilege alone, and decided not to stake any claim of attorney work product privilege, concerning the documents at issue. Tellingly, Honeywell had asserted attorney work product privilege for other documents on the May logs. Plaintiffs were entitled to rely on Honeywell's privilege assertions when they served a motion to compel forty-five days after PWC interposed its supplemental log. More importantly, PWC and Honeywell waited three weeks after plaintiffs filed their motion to compel to revise PWC's log to add the new assertions of attorney work product protection. Those new assertions only surfaced on the August 8 log after Honeywell filed its opposition to plaintiffs' motion to compel. Parties should not be permitted to re-engineer privilege logs to align their privilege assertions with their legal arguments. In this case, PWC and Honeywell waited until after they briefed the issues, and only then amended PWC's log *nunc pro tunc.* Such a practice undermines

the very purpose of privilege logs, and promotes the kind of gamesmanship that courts discourage in discovery. Therefore, plaintiffs' motion to compel the production of documents to which Honeywell added a claim of work product protection in the August 8, 2003 privilege log is granted.[3]

In their reply, plaintiffs raise alleged deficiencies in PWC's privilege log descriptions of the documents withheld. As previously noted, PWC served a revised privilege log on August 8, 2003, after Honeywell and PWC filed their opposition papers. Plaintiffs do not address the August 8 log in their reply brief. As such, this Court denies plaintiffs' application concerning the deficient descriptions of privilege and work product on PWC's logs at this time. The parties are directed to meet and confer to attempt to resolve this issue without judicial intervention.

Plaintiffs also argue that Honeywell waived all privileges for documents added to the August 8 privilege log that were withheld from the production in early July 2003. Plaintiffs argue that the privileges have been waived because Honeywell did not produce a privilege log within a reasonable time. This Court disagrees and finds that the documents withheld from the production in early July were properly added to the August 8 revision of the privilege log, and the delay between the early July production of documents and the early August privilege log is reasonable. *See Rizzo v. McManus Group, Inc.*, No. 00 Civ. 772(WHP), slip op. at 2–3 (S.D.N.Y. Feb. 8, 2002).

Moreover, this Court declines plaintiffs' invitation to review "the few remaining improperly withheld" documents on PWC's privilege logs. As the Court advised counsel, it will not review unspecified allegedly privileged documents because the parties bear the burden of directing the Court to the specific documents and log entries they argue are withheld incorrectly. (Tr. at 22.) Thus, to the extent plaintiffs' motion asked this Court to review unspecified documents *in camera*, the motion is denied.

■ Lastly, plaintiffs seek production of documents listed on the May 2003 privilege logs as protected by the attorney work product privilege. Plaintiffs, however, do not seriously question the legitimacy of Honeywell's assertion of the work product privilege in the May 2003 privilege logs. Initially, plaintiffs argue that the pre-eminent business purpose of PWC's audits renders the work product doctrine inapplicable. However, Honeywell's assertion of work product protection for its audit letters and litigation reports prepared by its internal and external counsel, as well PWC documents memorializing Honeywell's opinion work product, is proper. *See United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir.1998) ("[A] document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)."). Plaintiffs do not argue otherwise in their reply briefs. Accordingly, plaintiffs' motion to compel production of the documents listed on PWC's privilege log is denied except with respect to those documents to which the attorney work product protection has been waived.

### PWC's "Permanent" and "Carryforward" Files on Honeywell

■ Plaintiffs seek to compel production of PWC's "permanent files," which consist of "certain client documents that are of use to the auditors on an ongoing basis." PWC argues that any documents contained in the permanent files are equally available from Honeywell itself since anything in the permanent files was given to PWC by Honeywell. Further, PWC contends that plaintiffs have not explained how these files are relevant to their claims against Honeywell.

■ Federal Rule of Civil Procedure 26(b)(1) authorizes a party to obtain informa-

---

**3.** Nothing in this Memorandum and Order, however, should be read as inviting a broader subject-matter waiver.

tion "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and information "reasonably calculated to lead to discovery of admissible evidence." A district court "whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1211–12 (Fed.Cir.1987); *accord Compaq Computer Corp. v. Packard Bell Elecs., Inc.,* 163 F.R.D. 329, 335 (N.D.Cal.1995). Where relevance is in doubt, the district court is to be permissive. *Truswal,* 813 F.2d at 1212; *Compaq Computer,* 163 F.R.D. at 335.

This Court finds that PWC's "carryforward" or "permanent" files are relevant and the fact that the same documents may be available from Honeywell is not persuasive. The documents in PWC's possession may differ slightly from Honeywell's copies. The PWC copies could include handwritten notes, and the fact that PWC has copies of documents itself can be relevant. Thus, plaintiffs' motion to compel the "carryforward" or "permanent" documents is granted, and PWC is directed to produce documents responsive to that request.

*PWC's Workpapers and All Related Documents for Pittway*

■ PWC was the auditor for Pittway before it was acquired by Honeywell. Plaintiffs seek all documents and workpapers concerning PWC's audits of Pittway prior to its acquisition, as well as consulting workpapers and documents, on the grounds that the Pittway divisions were a source of uncollectible receivables about which Honeywell made misrepresentations. PWC argues that it has already produced all documents that it previously provided to Honeywell on behalf of Pittway as part of the pre-acquisition due diligence.

This Court finds that the Pittway audit workpapers are relevant since post-acquisition Honeywell would have access to them, making them relevant to plaintiffs' claims that Pittway was the subject-matter of some of the alleged fraudulent misrepresentations. Thus, plaintiffs' motion to compel production of the Pittway audit workpapers is granted,

and PWC is directed to produce documents responsive to that request.

*PWC Correspondence, Memoranda, E-mail, etc., Concerning Honeywell*

■ Plaintiffs also seek essentially all communications in PWC's possession concerning Honeywell for the period January 1999 through March 2001. Plaintiffs argue that they are entitled to see the entirety of PWC's files on Honeywell in order to determine what information Honeywell and third parties provided to—and concealed from— PWC. Moreover, plaintiffs argue that auditors are routinely required to produce all responsive e-mails, not just those in the workpapers. Lastly, plaintiffs argue that PWC's claim of substantial burden is unfounded because it has not submitted evidence or an affidavit establishing the burden, and has not explained why this demand is different from all other demands for correspondence in other cases that are routinely responded to by other parties.

PWC contends that they have already produced the "most relevant" correspondence, memoranda, and electronic documents as part of the workpapers. Further, PWC notes that it has already produced the "desk files" of the six senior engagement personnel on the Honeywell audits, documents relating to PWC's due diligence work, and all correspondence that PWC claims is even arguably relevant to any claims or defenses.

Plaintiff's request, as currently framed, is overly broad. It contains absolutely no limitation as to subject-matter or individual. Thus, plaintiffs' motion to compel production of all correspondence, memoranda, e-mail, etc., is denied.

*PWC's Honeywell Consulting Documents*

■ Plaintiffs seek all documents and workpapers relating to professional services performed by PWC for Honeywell other than audits, including documents related to consulting work, due diligence, assurance, accounting and attestation, tax preparation and agreed upon procedures. Specifically, plaintiffs request all documents relating to any due diligence or consulting work performed by PWC for Honeywell concerning its failed merger with General Electric ("GE"). Plain-

tiffs argue that one of the reasons the merger failed was because GE found accurate financial information concerning Honeywell. PWC asserts that it has repeatedly informed plaintiffs that "to the extent that it has any documents relating to any due diligence conducted in connection with a proposed merger between Honeywell and General Electric, they were contained within the Honeywell workpapers produced." (PWC Opp. at 20.)

This Court finds that the Honeywell consulting documents are not relevant and thus not discoverable. Plaintiffs have not persuaded this Court that these documents are relevant to any claim or defense in their complaint. Indeed, their reliance on issues concerning pension plans is unavailing since there are no related allegations in their complaint. Further, this Court is satisfied with PWC's assertion that to the extent it has any GE due diligence documents it has already produced them. Thus, plaintiffs' motion to compel production of documents related to professional services performed by PWC for Honeywell other than documents concerning audits is denied.

*PWC's Independence vis-a-vis Honeywell*

█ Plaintiffs seek all documents relating to PWC's independence vis-a-vis its Honeywell engagements. Plaintiffs argue that these documents are relevant to a possible or anticipated defense for PWC—reliance on independent audits. Plaintiffs have already found one document in PWC's production that purports to be a letter to Honeywell alerting it that certain professionals at PWC had investments in AlliedSignal, Inc. ("Allied"), which merged with Honeywell, when PWC was performing audit services for Allied.

PWC argues that the letter cited by plaintiffs does not demonstrate that PWC's independence was "compromised." Rather, PWC contends that the letter indicates that PWC was attentive to independence issues in connection with the Honeywell audit, and undertook to adhere to applicable rules.

PWC's independence is clearly relevant to a possible Honeywell defense. Moreover, this request is not a fishing expedition. Plaintiffs have persuaded this Court that they have a good faith belief that similar documents may exist. Thus, plaintiffs' mo-

tion to compel documents concerning PWC's independence vis-a-vis Honeywell is granted, and PWC is directed to produce documents responsive to that request.

*Document Retention Policies*

█ Plaintiffs seek a copy of PWC's document retention policies from January 1999 to the present, as well as all documents reflecting how the documents sought by the subpoena were preserved, maintained and collected by PWC for production to plaintiffs. To support their motion, plaintiffs refer to a recent SEC administrative settlement in an unrelated matter where PWC allegedly altered and destroyed workpapers. Moreover, plaintiffs insist that there are documents missing from PWC's production that should have been produced.

PWC labels plaintiffs' reliance on the SEC administrative settlement as "transparent and inflammatory." (PWC Opp. at 22–23.) PWC further argues that plaintiffs' sparring over document retention rests on the misapprehension that certain documents should exist. PWC claims it has advised plaintiffs that it retains workpapers for a period of seven years. Finally, PWC maintains that there is no basis for plaintiffs to demand documents reflecting PWC's efforts to comply with the subpoena.

Plaintiffs lack a concrete basis for this request. Therefore, their motion to compel production of documents related to PWC's document retention and destruction policies, and the efforts to preserve, maintain and collect documents, is denied.

*Costs*

█ Finally, PWC requests that the Court direct plaintiffs to pay for costs incurred in gathering and copying documents. PWC claims that as a non-party to the underlying litigation, plaintiffs should share in the costs of copying and searching for documents. Rule 45 of the Federal Rules of Civil Procedure requires the Court to protect nonparties from "significant expense resulting from the inspection and copying commanded." Fed.R.Civ.P. 45(c)(2)(B). "However, the required '[p]rotection from significant expense does not mean that the requesting party necessarily must bear the entire cost of

compliance.... [A] non-party can be required to bear some or all of its expense where the equities of a particular case demand it.'" *In re Law Firms of McCourts*, No. M19–96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr.9, 2001) (quoting *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C.1992)). To determine who should bear the costs, courts consider three factors: "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance." *Linder v. Calero–Portocarrero*, 180 F.R.D. 168, 177 (D.D.C.1998). Here, PWC is not a classic disinterested nonparty. *See In re First Am. Corp.*, 184 F.R.D. 234, 241–42 (S.D.N.Y.1998). Moreover, PWC has not offered any basis for determining the reasonable costs for compliance with the subpoena. Accordingly, this Court denies PWC's request.

### Conclusion

For the reasons set forth above, plaintiffs' motion to compel production of certain PWC documents is granted in part and denied in part, and PWC's motion to quash the subpoena is granted in part and denied in part.