**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted:  August 4, 2021
Date Decided:  August 10, 2021

Amy E. Evans, Esq.
DLA PIPER LLP
1201 North Market Street
Suite 1200
Wilmington, Delaware 19801

Amy L. Ruhland, Esq.
DLA PIPER LLP
401 Congress Avenue
Suite 2500
Austin, Texas 78701

Jason C. Jowers, Esq.
Sarah T. Andrade, Esq.
BAYARD P.A.
600 North King Street
Suite 400
Wilmington, Delaware 19801

R. Kyle Hawes, Esq.
Yliana E. Trevino-Hawkins, Esq.
CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY
1200 Smith Street
Suite 1400
Houston, Texas 77002

RE:  *In re Delaware Subpoena Issued Pursuant to Letters Rogatory in
De Lage Landen Financial Services, Inc. v. Spinal Technologies, LLC, et al.*
C.A. No. N21M-01-040

Dear Counsel:

This Letter Order memorializes certain bench rulings made in this third-party

discovery matter that governed the ensuing meet-and-confers on the scope of

discovery before ultimate resolution of the underlying dispute.

This action came before the Court by way of Letters Rogatory granted by a Texas district court seeking a subpoena for and discovery from a non-party Delaware corporation. As the underlying litigation is currently before the issuing Texas trial court, this Court's only involvement relates to the discovery requested of a Delaware corporate citizen. The Court's authority and duties in this matter—as they were resolved in serial conferences and hearings—are now further detailed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE DELAWARE PARTIES

The movant in this immediate action is Mazor Robotics, LLC, a Delaware Corporation.[1]

The nonmovants in this action and the defendants in the underlying action are Spinal Technologies, LLC, a Texas limited liability company with its principal office in Harris County; Richard R.M. Francis and Juanitta Francis, individuals residing in Harris County, Texas; and Richard R.M. Francis M.D. P.A., a Texas professional association with its principal office in Harris County, Texas (collectively "Spinal Tech").[2]

---

[1] Spinal Tech's Opp'n to Mazor's Mot. to Quash, Ex. 1, Spinal Tech's First Am. Mot. for Letters Rogatory to Mazor at 2, Feb. 22, 2021 (D.I. 82).

[2] Mazor's Mot. to Quash, Ex. D, Spinal Tech's Original Third-Party Pet. ¶¶ 3-6, Feb. 11, 2021 (D.I. 78).

The plaintiff in the underlying action is De Lage Landen Financial Services, Inc., a Michigan corporation with its principal place of business in Wayne, Pennsylvania.[3]

## B. THE TEXAS LITIGATION

The underlying dispute here concerns a lawsuit before a Harris County, Texas court between plaintiff De Lage Landen and defendants Spinal Tech.[4]

Those parties had entered into a Master Lease Agreement where De Lage Landen leased Mazor equipment to Spinal Tech.[5] Two and a half years into that Agreement, Spinal Tech allegedly defaulted on its payment to De Lage Landen, and in turn, De Lage Landen brought suit against Spinal Tech alleging Breach of Contract and Breach of Individual Guaranties.[6]

In Spinal Tech's response to De Lage Landen's complaint, Spinal Tech brought a counterclaim for fraudulent inducement against De Lage Landen, arguing the fraud was perpetrated by De Lage Landen and also through its agent Mazor.[7]

---

[3]   *Id.* ¶ 7.

[4]   Mazor's Suppl. Mot. to Quash ¶ 1, Mar. 12, 2021 (D.I. 90).

[5]   Mazor's Mot. to Quash, Ex. B, De Lage Landen's original petition before the Texas Court ¶ 7 (*De Lage Landen Fin. Servs. v. Spinal Tech., et al.*, Cause No. 201978823).

[6]   *Id.* ¶¶ 10, 13-17.

[7]   Mazor's Mot. to Quash, Ex. C, Spinal Tech's First Am. Ans. and Countercl. ¶¶ 10-12.

Mazor's involvement in the underlying dispute is as the manufacturer of the allegedly defective equipment.[8] In addition to manufacturing the equipment, Spinal Tech alleges that Mazor worked together with De Lage Landen to induce Spinal Tech to enter into the Agreement for the allegedly defective equipment.[9]

Spinal Tech then filed a Third-Party Petition against Mazor stating four causes of action—a Texas Deceptive Trade Practice Act violation, a Breach of Implied Warranty, a Breach of Contract, and Fraud; that petition was dismissed by the Texas Court.[10] Thereafter, Spinal Tech filed an amended petition with only one cause of action—a Deceptive Trade Practice claim; that action is still pending before the Texas Court.[11]

## C. THE DELAWARE SUBPOENAS

Spinal Tech, after filing an amended Third-Party Petition in the Texas Court, moved for that court to issue Letters Rogatory allowing Spinal Tech to subpoena and

---

[8]  Spinal Tech's Opp'n to Mazor's Mot. to Quash, Ex. 1 at 2.

[9]  *Id.* at 3.

[10]  Mazor's Mot. to Quash, Ex. D ¶¶ 20-41; Spinal Tech's Opp'n to Mazor's Mot. to Quash, Ex. 1 at 2.

[11]  Mazor's Mot. to Quash, Ex. D ¶¶ 18-22; Spinal Tech's Opp'n to Mazor's Mot. to Quash, Ex. 1 at 2.

depose non-party Mazor.[12]  The Texas Court granted the Letters Rogatory and Spinal

Tech served Delaware subpoenas on Mazor pursuant to those Letters Rogatory.[13]

Upon being served with the subpoenas, Mazor asked for, and was granted by

Spinal Tech, a ten-day extension to respond.[14]  Then, after a meet and confer, Mazor

filed the instant application, a Motion to Quash/Protective Order seeking some

shelter from Spinal Tech's subpoenas and requests for production.[15]

## II.   DISCUSSION

### A. THIS COURT'S AUTHORITY OVER DISCOVERY MATTERS IN THIS CASE.

According to Spinal Tech, this Court is not the appropriate one to hear

Mazor's Motion to Quash/Protective Order.[16]  Instead, it says, the Texas court where

the underlying litigation is pending is the appropriate one to hear Mazor's

complaints.[17]  This is so, Spinal Tech insists, because (1) the Texas Court is in a

---

[12]   Spinal Tech's Opp'n to Mazor's Mot. to Quash ¶ 2.

[13]   *Id.* ¶ 3.

[14]   *Id.* ¶ 3-4.

[15]   *Id.* ¶ 4.

[16]   Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 1, Mar. 12, 2021 (D.I. 89).

[17]   *Id.*

better position to hear the Motion to Quash, and (2) Mazor has already litigated the subpoena issue before the Texas Court.[18]

There is some curb appeal to Spinal Tech's arguments, but in the end, they fail. While Texas might be the *easier* forum to hear this Mazor's motion, the Delaware precedent that Spinal Tech itself cites tells us that Delaware is the *appropriate* forum to hear it. And even if Mazor already litigated some propriety and scope issues in Texas (which Mazor says it really didn't), Spinal Tech doesn't show how that matters here.

### 1. This Court is the appropriate one to hear Mazor's Motion to Quash and Motion for Protective Order.

Spinal Tech relies on *Louisiana Municipal Police Employee's Retirement System v. Fertitta* for the proposition that the Texas court is the appropriate one to hear the present motion to quash.[19] In *Louisiana Municipal Police Employee's Retirement System*, the Vice Chancellor, after granting three Motions for Commissions to take depositions in North Carolina, issued a Dear Counsel letter addressing those motions and asking the parties to work together.[20] While Spinal

---

[18]   *Id.* ¶¶ 1, 2, 6.

[19]   *Id.* ¶ 2; 2009 WL 3806216 (Del. Ch. Oct. 27, 2009).

[20]   *Louisiana Mun. Police Employees' Ret. Sys.*, 2009 WL 3806216, at *1.

Tech cites to the Vice Chancellor's observation that originating courts are in an easier position to hear issues regarding subpoenas and "miscellaneous actions[,]" Spinal Tech's selective quotation misses his most relevant statement on the subject[21]—that "[a] third party of course has the right to object to the subpoena in the court from which it issues[,]" here Delaware.[22]

So while the Vice Chancellor rightly noted that discovery courts could be "burden[ed] . . . with discovery disputes relating to matters in which the merits are not before them[,]" he also confirmed that it is the discovery court that has the authority to decide a motion to quash when called upon.[23]

In response to Mazor's citation to *The Chemours Company TT, LLC v. ATI Titanium LLC*, Spinal Tech again fails to account for the substance of the Court's order.[24] In *Chemours*, this Court found that, as the discovery state, Texas was the appropriate forum to hear the subject motion to quash a subpoena issued there in

---

[21]   *See* Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 2.

[22]   *Louisiana Mun. Police Employees' Ret. Sys.*, 2009 WL 3806216, at *1.

[23]   *Id.*

[24]   Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 2. *The Chemours Co. TT, LLC v. ATI Titanium LLC*, Del. Super., C.A. N15C-03-083 WCC CCLD, Carpenter, J. (D.I. 79—Nov. 25, 2015).

support of a case pending here.[25]  This Court recognized that while Delaware might be the *better* forum to handle the dispute, the "Court is compelled to find the dispute involving a subpoena issued to a non-party" be heard in the subpoena-issuing discovery state (Texas) and governed by its law.[26]

Spinal Tech says "*Chemours* is factually different from this matter for several reasons, including importantly that the Commission at issue was obtained 'without any objection.'"[27]  But that fact is of no consequence to *Chemours*' utility here.  And Spinal Tech's assertion that it could prove "extraordinarily inefficient and wasteful for this Court, having no familiarity with this case, to resolve identical issues and arguments regarding this Subpoena that Mazor raised, and the Texas Court already ruled upon,"[28] while potentially true, is no statement of the controlling law and principles here.  To be sure, the exercise of determining the propriety of a subpoena issued in support of a sister state's case might prove burdensome and inefficient.

---

[25]  *Chemours*, at ¶ 8.

[26]  *Id.*

[27]  Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 3 (quoting *Chemours*, at ¶ 2).

[28]  *Id.* ¶ 6.

But that exercise is also proper and required.[29]

Comity between states does not demand efficiency.[30] Rather it demands proper relations between the sovereign states and protection of each one's citizens from overreach by another and by the federal system.[31]

### 2. Even if Mazor were prohibited from doing so, it's not 'relitigating' an already-decided motion to quash.

Whether it is true, or not, that Mazor had two bites of the proverbial apple, Spinal Tech can point to no statute or case instructing that a non-party (or any litigant) only has one opportunity to contest a subpoena in this context. And Mazor claims that it could only dispute the Letters Rogatory in Texas as a whole because the present subpoena had not been issued, and Texas law does not allow for non-parties "to object to specific requests attached to letters rogatory."[32] If so, that

---

[29] *Chemours*, at ¶ 8 ("[T]his Court is compelled to find the dispute involving a subpoena issued to a non-party who is not a resident of Delaware should be governed by Texas law and resolved by a ruling from the Texas Court.").

[30] *See generally Myers v. United States*, 272 U.S. 52, 85 (1926) (Brandeis, J., dissenting) (noting that certain bedrock tenets of American governance have been adopted and have developed "not to promote efficiency but to preclude the exercise of arbitrary power" by another authority).

[31] So noted this Court in *Mine Safety Appliances Co. v. AIU Ins. Co.*—"a Delaware court should refrain from controlling the disposition of out-of-state subpoenas because, presumably, courts in other states would respect Delaware's right under the [Uniform Interstate Depositions and Discovery Act] to adjudicate the matters concerning subpoenas issued to Delaware residents." — 2014 WL 4724843, at *1 (Del. Super. Ct. Sept. 19, 2014); Mazor's Suppl. Mot. to Quash ¶ 13.

[32] *Id.* ¶ 14. *See also id.* ¶ 15 ("Further, the Texas Rules of Civil Procedure do not allow parties to move to quash or for protective order prior to the actual issuance of a subpoena.").

alone might defeat Spinal Tech's argument that Mazor is relitigating the issues posed here.[33]

But the Court need not simply take Mazor's statement as true. The Court has the opposition to Spinal Tech's Motion for Letters Rogatory that Mazor submitted before the Texas court.[34] There, Mazor opposed Spinal Tech's Motion for Letters Rogatory as a whole; Mazor didn't litigate the substance or scope of the specific requests comprising the now-sought discovery.[35] Unlike Spinal Tech's claim that Mazor now has "a second chance to reargue the same issues[,]"[36] Mazor is in fact litigating the now-specified and subpoena-enforced discovery requests for the first time in the very court that issued the specific process it seeks relief from. And this Court, no doubt, has both the authority over and interest in insuring that a Delaware citizen subject to a subpoena it, as a Delaware court, has issued is given the

---

[33] Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 1 ("Mazor recognized that the Texas Court is the appropriate Court to hear the substantive issues regarding the Subpoena when it submitted an opposition in Texas, which the Texas Court reviewed and considered.").

[34] Spinal Tech's Opp'n to Mazor's Mot. to Quash Spinal Tech, Ex. 2, Mazor's Opp'n to Spinal Tech.'s Mot. for Letters Rogatory at 1-4.

[35] *Id.*

[36] Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 3.

protections that might be available under its own rules and governing law.[37]

### B. THE COURT MAY ORDER SPINAL TECH TO PAY MAZOR'S DISCOVERY COSTS.

Spinal Tech says Mazor should cover any costs that Mazor might incur to answer Spinal Tech's subpoenas and discovery requests.[38] Unsurprisingly, Mazor wants Spinal Tech, the requesting party, to reimburse any of Mazor's costs occasioned by Spinal Tech's discovery demands.[39]

Subpoenas issued by this Court in civil cases are governed by its Civil Rule 45. That rule expressly allows the Court to "quash or modify the subpoena if it:

(i)     fails to allow reasonable time for compliance,

(ii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iii)   subjects a person to undue burden."[40]

---

[37] *See* Del. Code Ann. tit. 10, § 4311(f) (2021) ("An application to the Superior Court for a protective order or to enforce, quash, or modify a subpoena issued by the prothonotary under [the Delaware Uniform Interstate Depositions and Discovery Act] must comply with the rules or statutes of this State . . ."); *see also Mine Safety*, 2014 WL 4724843, at *1; *Chemours*, at ¶ 8. The interests animating these principles are of no lesser import when—as here—the subject Delaware subpoena is issued pursuant to letters rogatory and our common law practice rather than process initiated by a foreign subpoena via the Uniform Interstate Depositions and Discovery Act. *See* 1 WOOLEY ON DELAWARE PRACTICE § 614 (1906) (explaining letters rogatory and the procedure thereunder in Delaware).

[38] *Id.* ¶ 7.

[39] Mazor's Suppl. Mot. to Quash ¶ 17.

[40] Del. Super. Ct. Civ. R. 45(c)(3)(A).

Too, the rule directs that "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded."[41]

In support of its contentions that Mazor should foot its own discovery costs, Spinal Tech suggests that: (1) courts as a rule should not shift discovery costs from non-parties; (2) Mazor is not a traditionally disinterested non-party and should have reasonably anticipated litigation, thus it should pay for its discovery costs; and, (3) Mazor's estimate for its discovery costs are miscalculated.[42]

## 1. Courts do, when appropriate, shift discovery costs from non-parties.

Spinal Tech's first relies on *Solow v. Aspect Resources, LLC*, to conclude that Delaware Courts do not shift discovery costs from non-parties.[43]  There, the Chancery Court denied the reimbursement of non-party discovery costs.[44]  But, the Chancery Court did so because the non-party "fail[ed] to do more than merely assert, without adequate factual support, that compliance with the subpoena will cause [the

---

[41]   Del. Super. Ct. Civ. R. 45(c)(2)(B).

[42]   Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶¶ 7, 8, 13.

[43]   2007 WL 3256944, at *2 (Del. Ch. Oct. 30, 2007); Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 7.

[44]   *Solow*, 2007 WL 3256944, at *2.

non-party] to incur 'significant expenses' so as to require the Court's protection."[45]

Of particular importance, the non-party's brief in opposition to the motion to compel stated only that it "has no financial interest in the outcome of the case, and nor is this litigation of public importance, [non-party]'s equitable share of assisting the Plaintiff's discovery efforts is minimal."[46]

*Solow* is of no help to Spinal Tech here. Mazor has provided an affidavit setting forth its best estimate of the costs it would incur in answering Spinal Tech's requests, and why its efforts and those costs represent a significant burden.[47]

Moreover, as Mazor points out, courts do on occasion allow for non-party discovery costs to be shifted to the requesting party.[48] While Mazor's cited cases are from federal courts, those courts applyFederal Rule of Civil Procedure 45—the federal analog to this Court's applicable civil rule. And those federal decisions are clearly grounded both on the equitable principles made a bit more explicit in the

---

[45] *Id.*

[46] Non-Party Noble Energy, Inc.'s Opp'n to Pl.'s Mot. to Compel at ¶ 21, *Solow v. Aspect Res., LLC*, Del. Ch., C.A. 20397-CS, Chandler, C. (D.I. 77—Aug. 22, 2007).

[47] Mazor's Suppl. Mot. to Quash ¶ 19.

[48] *See Standard Chlorine of Del. v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992) (shifting non-party discovery costs); *Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 612 (D. Del. 1973) (shifting non-party discovery costs).

federal rule[49] and the same fairness principles that command this Court to protect

anyone subpoenaed from undue hardship and burden.[50]

### 2. Spinal Tech's suggestion that Mazor is no disinterested non-party and should, therefore, cover its own discovery costs is unavailing.

Spinal Tech's second argument is that Mazor is no innocent non-party, but in

fact "largely caused the underlying litigation."[51] Maybe—but until Spinal Tech

successfully joins Mazor in the underlying litigation, it's still a non-party.

Again, Spinal Tech's cited cases are of little assistance to its cause.[52] In *In*

*re First Am. Corp.*, the federal district court decided that the non-party should pay

its discovery costs only after finding that the non-party was and had been a party to

litigation surrounding the same operative facts as those in that New York case.[53] As

---

[49] Of relevance here, Federal Rule of Civil Procedure 45 provides that "[t]hese acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45 (d)(2)(B)(ii).

[50] Del. Super. Ct. Civ. R. 45(c).

[51] Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 8.

[52] *Id.*

[53] 184 F.R.D. 234, 242 (S.D.N.Y. 1998). Spinal Tech mentions a later SDNY case—*In re Honeywell Int'l, Inc. Sec. Litig.*, where the court found the subpoenaed non-party accounting firm was "not a classic disinterested non-party", 230 F.R.D. 293, 303 (S.D.N.Y. 2003)—but provides no real insight into how that was or should be determined. And the Court is not ready here to blithely attach the label "non-classic disinterested non-party" to strip Mazor of any Rule 45 protection it might otherwise be due.

it was and had been a party to litigation involving the same facts, it "could have anticipated that the failed transactions would reasonably spawn some litigation[.]"[54] Here—though Spinal Tech has tried—Mazor is not and has not been a party to this litigation, and as such can hardly be said to have expected Spinal Tech's barrage here.

Spinal Tech resorts also to *Wells Fargo Bank, N.A. v. Konover*, where the federal district court refused to shift costs for non-party discovery because the non-party was actually a limited partnership in which the sued defendant had a 33% limited partnership interest.[55] Again, not a case that is particularly helpful under these circumstances.

Whatever might be made of the significant factual dissimilarities just mentioned, application of the balancing used by the federal courts when deciding on non-party discovery cost-shifting under Federal Rule of Civil Procedure 45—which Spinal Tech does not directly engage[56]—also cuts against its position here. The three factors that the federal courts consider when resolving these questions are: "(1) whether the non-party actually has an interest in the outcome of the litigation;

---

[54] *In re First Am. Corp.*, 184 F.R.D. at 242 (internal quotation marks and citations omitted).

[55] *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009).

[56] Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 9.

(2) whether the non-party can more readily bear the costs than the requesting party; and (3) whether the litigation is of public importance."[57] And, while not dispositive, if the non-party is not traditionally "disinterested," federal courts are less inclined to grant discovery cost shifting.[58] But when warranted, a federal district court has not hesitated to order a requesting party to pay the costs incurred by a non-party to whom its discovery subpoena has been targeted.[59] And to be sure, this Court is empowered by its rules to do so.[60] If needed, after the parties meet and confer the agree upon the specific RFPs at issue, the Court will engage the appropriate balancing test to determine if such cost shifting is appropriate here.

### 3. At this point, Spinal Tech has not established that Mazor's discovery costs are out of line.

Spinal Tech also asserts that Mazor's discovery costs estimate is wrong.[61] Now, Spinal Tech doesn't reveal what it believes the actual cost of production should be. It just says the volume Mazor estimates it needs to review isn't "an indication

---

[57] *Konover*, 259 F.R.D. at 207 (citing *Linder v. Calero–Portocarrero*, 180 F.R.D. 168, 177 (D. D.C. 1998)).

[58] *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. at 303.

[59] *E.g.*, *Standard Chlorine of Del.*, 821 F. Supp. at 262; *Celanese Corp.*, 58 F.R.D. at 612.

[60] *See* Super. Ct. Civ. R. 45.

[61] Spinal Tech's Suppl. Opp'n to Mazor's Mot. to Quash ¶ 13.

of the real number of documents that will need to be reviewed."[62]  That's not good

enough.

At this stage, Mazor has properly demonstrated the substantial costs it might

incur to complying with the subpoenas and requests as issued.[63]  And so, if called

upon to do so after the parties pare down the contested production issues, the Court

will be guided by Rule 45(c)(3)(B)'s command to protect non-parties from

significant expenses resulting from a discovery demand.[64]

### III.  CONCLUSION

So this Court is the appropriate one to hear the substance of the propriety and

scope issues raised in Mazor's Motion to Quash/Protective Order related to the

subpoenas it issued under the Texas district court's letters rogatory.  And the Court

is authorized when regulating this specific portion of the discovery process to order

---

[62]  *Id.*

[63]  *E.g.*, Mazor's Suppl. Mot. to Quash ¶ 19 ("[Medtronic's Legal Director and Discovery Counsel] testified that pulling even a fraction of the documents Spinal Tech has requested would cost, <u>at a minimum</u>, approximately $327,000 and takes months to accomplish.").

[64]  And the Court might do so by, for instance, fixing costs upfront to avoid uncertainty for both Spinal Tech and Mazor.  *See* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment ("A non-party required to produce documents or materials is protected against significant expense resulting from involuntary  assistance to the court. This provision applies, for example, to a non-party required to provide a list of class members. The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs.").

Spinal Tech to compensate Mazor for its discovery costs.  As explained, no further proceedings on this motion should occur until the parties meet and confer on the scope of Spinal Tech's Requests for Production and the scope of the depositions to be held under the subpoenas issued.  At that point, if needed, the Court will resolve any remaining objections using the applicable Delaware rules of civil procedure, controlling Delaware case law on such discovery issues, and the cost allocation principles explained above.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge

cc: All Counsel via File and Serve